JOHN S. SARGETIS (SBN: 80630)
W. CHRISTOPHER SIMS (SBN: 276969)
**UNITED LAW CENTER**
3013 Douglas Blvd., Suite 200
Roseville, CA 95661
Tel: (916) 367-0647
Fax: (916) 265-9000

Attorneys for Plaintiffs,
JASON DESCHAINE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DESCHAINE,<br><br>          Plaintiff,<br><br>v.<br><br>INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB; FEDERAL HOME LOAN MORTGAGE CORPORATION; MTC FINANCIAL INC. DBA TRUSTEE CORPS and DOES 1 through 50, inclusive,<br><br>          Defendants. | CASE NO.: 2:13-cv-01991-WBS-CKD<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1. Intentional Misrepresentation;<br>2. Negligent Misrepresentation;<br>3. Breach of Contract;<br>4. Promissory Estoppel;<br>5. Negligence;<br>6. Violation of Business & Professions Code §17200;<br>7. Equitable Accounting;<br>8. Violation of Cal. Civ. Code §2923.6 (c);<br>9. Violation of Cal. Civ. Code §2923.6 (d);<br>10. Violation of Cal. Civ. Code §2923.7;<br>11. Violation of Cal. Civ. Code §2924;<br>12. Equitable Action to Set Aside Sale.<br><br>[JURY TRIAL DEMANDED] |

**COMES NOW**, Plaintiffs JASON DESCHAINE ("Plaintiff") and alleges the following against Defendants, and each of them, as follows:

## I. THE REAL PROPERTY AND PARTIES

1.      Plaintiff is, and at all times herein relevant was, an adult individual residing in Rough and Ready, County of Nevada, State of California.

2.      The action is against Defendants for damages, and equitable relief resulting from the Defendants' acts or omissions as set forth herein concerning the residential mortgage modification transactions for Plaintiff's residence located at 10684 Bonanza Way, Rough and Ready, CA 95975 ("Subject Property")

3.      Defendant INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB ("SERVICER") was the former servicer of the Subject Loan and was the Servicer of the Subject Loan at all times relevant stated in this Complaint. SERVICER regularly engages in mortgage related activities in the State of California and in the County of Nevada.

4.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION was the purported beneficiary of the Subject Note and Deed of Trust pursuant to an Assignment of Deed of Trust and pursuant to a Trustee's Deed Upon Sale is the current title holder of the Subject Property ("BANK"). BANK regularly engages in mortgage related activities in the State of California and the County of Nevada.

5.      Defendant MTC FINANCIAL INC. DBA TRUSTEE CORPS ("TRUSTEE") is the trustee named on the Trustee's Deed Upon Sale and is the current purported trustee of the Subject Loan. TRUSTEE regularly conducts business in Nevada County, State of California.

6.      All references to Defendants' capacity in recorded documents set forth in this Complaint are purported, whether specifically stated or not.

7.      Whenever reference is made in this Complaint to any act of any corporate or other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while acting within the actual and ostensible scope of their authority.

8.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names, and Plaintiff will amend this Complaint to show their true names, involvement and capacities when the same has been ascertained. Plaintiff is informed and believe, and on that basis allege, that each of the Defendants named herein as DOE was in some manner responsible for the harm and losses suffered by Plaintiff and/or will be responsible for future harm and losses to Plaintiff.

## II. JURISDICTION AND VENUE

9.     Plaintiff is, and at all times herein relevant was, an adult individuals residing in Rough and Ready, County of Nevada.

10.     The Subject Property is located at10684 Bonanza Way, Rough and Ready, CA 95975.

11.     Venue is proper in the Eastern District since a substantial part of the events giving rise to the claims occurred within this district.

12.     This Court has personal jurisdiction over Defendants since they engaged in loan transactions and foreclosure activities occurring within the Eastern District of California.

## III. GENERAL ALLEGATIONS

13.     Plaintiff has resided at the Subject Property since 2003. Plaintiff and his wife currently reside at the Subject Property with their two children. They have a daughter who is 8 years old and a disabled 4 year old son who requires constant care.

14.     In or about 2009, Plaintiff began to experience financial difficulties which resulted in a financial hardship.

15.     Plaintiff contacted SERVICER and inquired about the possibility of applying for a HAMP loan modification.

16.     Plaintiff began the process of applying for a HAMP loan modification in or about September 2009.

17.     During the process, Plaintiff sent SERVICER their application and financial documents on numerous occasions. Plaintiff sent SERVICER the same documents on multiple

occasions. At various times, Plaintiff was told by SERVICER that they had not received the documents despite the fact that Plaintiff had sent them to SERVICER on numerous occasions to the fax numbers and addresses provided to Plaintiffs by SERVICER.

18.     On or about, February 1, 2010, Plaintiff was accepted into a HAMP trial period modification plan ("TPP") (See Exhibit "A" attached hereto). Under the TPP, Plaintiff's monthly mortgage payments, including taxes and insurance, was $1,790.15.

19.     Plaintiff made the three trial plan payments on time and after the third payment was completed expected SERVICER to grant them a permanent modification with the same payment terms as the trial plan. Plaintiff made one additional payment in May 2010. However, Plaintiffs was not granted a permanent loan modification and was told to continue to make the trial plan payments.

20.     On or about, July 14, 2010, SERVICER sent Plaintiff a Freddie Mac Backup Modification ("Backup Mod") (attached hereto as Exhibit "B") stating that Plaintiff did not qualify for a HAMP loan modification because his housing expense was less than 31% of his monthly income.

21.     Plaintiff alleges that SERVICER miscalculated their gross monthly income. As stated in the letter, SERVICER stated that Plaintiff's monthly income was $9,041.42. In fact, Plaintiff's business was a partnership and Plaintiffs' gross monthly income was, in fact, approximately $4,020.00 per month and under HAMP guidelines the amount of their modified monthly mortgage payments should have been approximately $1,246.20 per month. Further, Plaintiff called SERVICER and informed it of the error but SERVICER stated that they could only re-apply for a loan modification.

22.     Under the terms of the Backup Mod, Plaintiff's monthly payments would be $1,777.56 (44% of Plaintiff's gross monthly income) for the first five years and then would increase to approximately $1,919.00 per month which was approximately 47% of his gross monthly income.

23.     Plaintiff struggled to make the payments under the Backup Mod for approximately a year and half. However, because the monthly mortgage payments were based

on his inaccurate gross monthly income and comprised payments that constituted over 44% of his gross monthly income, Plaintiff again fell behind in their monthly mortgage payments.

24.     From approximately April 2012 to June 2013, Plaintiff attempted to obtain a loan modification from SERVICER. During this process, Plaintiff was again required to submit the same loan modification application and financial documents on multiple occasions. Upon information and belief, Plaintiff alleges that SERVICER again misplaced or mishandled his modification application and financial documents resulting in delays in the loan modification process and a waste of Plaintiff's time, resources and energy.

25.     On or about, April 16, 2012, Plaintiff submitted a complete loan modification application to SERVICER. However, this modification application was rejected on October 30, 2012. The reason stated for the denial was that the application was incomplete. Plaintiff alleges that the modification application was indeed complete and that SERVICER'S agents, employees or representatives mishandled or lost the documents submitted by Plaintiff.

26.     On or about November 1, 2012, Plaintiff submitted another complete loan modification application. However, this application was denied because SERVICER did not receive the application at least 37 days prior to the sale date scheduled for November 6, 2012.

27.     The sale date scheduled for November 6, 2012 was, in fact, postponed to January 22, 2013 and SERVICER also determined that the modification application submitted by Plaintiff on November 5, 2012 was complete. The completeness of the application was determined on November 7, 2012.

28.     On December 27, 2012, Plaintiff was informed, by SERVICER, that his modification application was denied because Plaintiff had been previously given a HAMP loan modification trial plan.  Upon information and belief, Plaintiff alleges that this denial, too, was groundless: the Federal Government amended the HAMP program effective June 1, 2012 to allow borrowers who had previously applied for and were denied a HAMP modification to reapply for a HAMP modification **after 12 months**.  Plaintiff's previous HAMP denial, as stated above, was on or about July 14, 2010, more than two years earlier.

29.     Moreover, during the period of time between April 2012 and December 27, 2012, SERVICER led Plaintiff to believe that he would be eligible and would receive a HAMP loan modification based on their true and accurate income. At no time did SERVICER state that Plaintiff would not be granted a loan modification based on the fact that the previous TPP was given. Further, Plaintiff's finances had changed and the original TPP and Backup Mod were based on inaccurate income, and Plaintiff made SERVICER aware of this fact on multiple occasions. In addition SERVICER stated that they would possibly obtain a principal reduction as well.

30.     On January 11, 2013, an agent, employee or representative of SERVICER verbally informed Plaintiff that they were ineligible for a HAMP loan modification as the loan could not be modified without going beyond the standard modification guidelines. Plaintiff was not provided with written notice of the denial, informed of his opportunity to appeal the denial or provided with the "standard modification guidelines" or given an explanation of that the "standard modification guidelines" were.

31.     At this point, Plaintiff was left with no choice and filed a Chapter 7 Bankruptcy to reorganize their debts and to stop the February 26, 2013, sale date from occurring.

32.     During their Bankruptcy, Servicer told Plaintiff he could re-apply for a loan modification and, as a result, Plaintiff submitted a complete loan modification application and faxed it to SERVICER on or about March 20, 2013 at 8:23 a.m.

33.     SERVICER received this application but requested that Plaintiff send another updated application. Plaintiff faxed the updated application to SERVICER on or about April 4, 2013 at 8:08 a.m.

34.     From April 2013 through June 2013, Plaintiff remained in constant contact with SERVICER and continued to send them updated financial documents when they were requested.

35.     On or about, June 11, 2013, Plaintiff contacted SERVICER and spoke with Alex W19 who stated that there was no foreclosure sale date but that SERVICER was requiring additional information to be submitted. Specifically, SERVICER needed a letter stating

Plaintiff's wife, BREANNA, worked full time and copies of the tax filing extensions. Plaintiff submitted this information and continued to submit the requested information and documents to SERVICER.

36.     On or about, June 24, 2013, Plaintiff called SERVICER and spoke to Albert 938 at 12:45 p.m. who stated that Plaintiff's Subject Property was scheduled to be sold the next day on June 25, 2013.

37.     Albert 938 was unable to give Plaintiff a specific reason why the sale was proceeding other than that Plaintiff had failed to provide SERVICER with a complete modification application 37 days before the scheduled sale date.

38.     The next day, on June 25, 2013, Plaintiff's Subject Property was sold at a trustee's sale. BANK purchased the Subject Property.

39.     Upon information and belief, Plaintiff alleges SERVICER, BANK and their agents, employees and representatives committed numerous violations of the Homeowner's Bill of Rights and Cal. Civ. Code 2924, et seq. included but not limited to: dual tracking, as the sale occurred while Plaintiff was in the midst of the foreclosure process; failing to provide Plaintiff with a single point of contact, as Plaintiff spoke with multiple individuals that were agents, employees or representatives of SERVICER and had little or no knowledge regarding the status of Plaintiff's modification application and Plaintiff was not provided with adequate reasons for the denials of the loan modification applications or given a full and fair opportunity to appeal SERVICER'S decision to deny the loan modification.

40.     In addition, Plaintiff alleges that due to the amount of TPP and Backup Mod payments made, the true amount of their default is unknown.

41.     Previously, on or about May 25, 2012, the Subject Note, Deed of Trust and Loan was assigned from Indymac Bank (the original lender) to SERVICER.

42.     On or about, October 12, 2012, the Subject Note, Deed of Trust and Loan was assigned from SERVICER to BANK, although the assignment was not recorded until June 27, 2013 two days after the sale of the Subject Property.

43.     Upon information and belief, Plaintiff alleges that the assignments were void because Plaintiff's Subject Note, Deed of Trust and Loan were assigned to a securitized trust shortly after the loan was originated.

44.     Upon further information and belief Plaintiff alleges that the securitized trust was formed under New York trust law and was governed by a pooling and servicing agreement (PSA).

45.     Upon information and belief, Plaintiff alleges that the terms of the PSA was violated as the assignments occurred after the closing date stated in the PSA.

46.     Presently, the true beneficiary of the Subject Note, Deed of Trust and Loan is unclear.

47.     Plaintiff has been prejudiced in that the original lender would have allowed a modification of the Subject Loan but, upon information and belief, the PSA forbid SERVICER and BANK from modifying the Subject Loan.

48.     Further, Plaintiff may be prejudiced in the event that the true beneficiary appears at a later date and attempts to enforce the Note against Plaintiff.

**Judicial Estoppel**

49.     On or about, February 2013, Plaintiffs filed a Chapter 7 Bankruptcy. At the time, the petition was filed, Plaintiffs were unaware of any possible claims they had against Defendants.

50.     Plaintiffs would have included the claims in their filing if they had been aware of the existence of the claims.

**Agency Agreement Between SERVICER and BANK**

51.     An agency agreement existed between SERVICER, and BANK so that the acts of SERVICER as set forth herein cause BANK to be liable therefor.  The agency agreement was actual and ostensible.  The agency relationship was actual in that BANK as Successor in interest to the Note, as the principal authorized SERVICER as agent had authority to represent and bind BANK in regard to a modification of the Subject Loan.

52.     The agency relationship was also ostensibly created by the conduct of SERVICER in representing to Plaintiff that they had the authority from BANK to inform Plaintiffs that the Subject Loan Modification would be approved by BANK.

53.     Further, Plaintiff is informed and believes that BANK and SERVICER regularly engaged in business with each other.

54.     An agency relationship also existed because BANK directed and authorized SERVICER'S conduct in connection with the Subject Loan Modification by directing SERVICER concerning what to tell Plaintiff.

55.     BANK's control over SERVICER was on information and belief, pursuant to contract and was comprehensive, immediate and day-to-day in that BANK directed the conduct of SERVICER throughout the modification process.

56.     BANK caused SERVICER to direct Plaintiff into becoming delinquent on his mortgage payments, into the Subject Loan Modification, and to inform Plaintiff that he qualified for and would receive the certain loan modification.

57.     BANK was also the principal of SERVICER because it had an agreement with SERVICER whereby it would accept loan modifications submitted to it by SERVICER, after inducing homeowners to become behind on their mortgages, delaying, and which could not be repaid, for the purpose of receiving federal funds for servicing distressed loans for each of their financial gain, and without regard to borrowers' ability to pay.  This is what occurred in regard to Plaintiffs' loan modification.

58.     Further, upon information and belief, Plaintiff alleges that because SERVICER was acting as a servicer and agent of BANK, BANK as principal is liable for all other acts complained of by Plaintiff.

**Tender**

59.     Due to Defendants' unclean hands, equity does not require Plaintiff to allege tender.

60.     Further, Plaintiff has alleged violations of California's Homeowner's Bill of Rights and it would be inequitable to require Plaintiff to tender the amount due.

61.     Further, Plaintiff has alleged that the Assignments of Deeds of Trusts related to the Subject Note, Deed of Trust and Loan are void, and as such, tender is not required.

62.     In the alternative, notwithstanding the foregoing, Plaintiff unconditionally offers to tender to the extent required by law any amount due and owing after offset for damages for Defendants' bad acts, to the true beneficiary under the deed of trust or holder of the note in due course, and without waiver of Plaintiffs' rights.

**FIRST CAUSE OF ACTION**
**Intentional Misrepresentation**
**(Against SERVICER, BANK and DOES 1-50, Inclusive)**

63.     Plaintiff incorporates each of the paragraphs set forth above and below as though fully set forth herein.

64.     **Misrepresentation #1:** On or about October 30, 2012, Plaintiff's loan modification was denied on the basis that the loan modification application was incomplete. In fact, Plaintiffs allege that they submitted a complete loan modification application to SERVICER.

    i.   Who made the representation:

        1.   Who: SERVICER and SERVICER'S representatives/employees/agents.

        2.   Employer: SERVICER

        3.   Title, capacity, or role of the person: employee/representative/agent of SERVICER.

    ii.  Authority to speak: Employee/Representative/Agent of SERVICER was given authority from SERVICER.

    iii. How or by what means was the representation made: verbally.

    iv.  When was the representation made: In or about October 30, 2012.

    v.   Where was the representation made: Over the phone between Plaintiff, Plaintiff's Wife and SERVICER'S employees/agents/representatives.

    vi.  To whom was the representation made: to Plaintiff and his wife.

b. **What was false or misleading about the representation:** Upon information and belief, Plaintiff alleges that he submitted a complete loan modification application to SERVICER.

c. **The materiality of the false representation:** The misrepresentation was material because it concerned the Subject Loan, the Subject Property and Plaintiff's ability to obtain a modification for the Subject Loan.

65. **Knowledge of Falsity:** The above representation was made with reckless disregard for the truth as SERVICER'S representatives knew or should have known that Plaintiff submitted a complete loan modification application as they were working with Plaintiff to obtain the necessary documents for the loan modification.

66. **Intent to Induce Reliance:** SERVICER intended to induce Plaintiff's reliance so Plaintiff would remain delinquent on his Subject Loan payments thus enabling SERVICER to maintain its status as a "special servicer" which would in turn enable them to collect additional servicing costs. SERVICER and their representatives knew that Plaintiff would rely on the representations because SERVICER was the servicer of the Subject Loan and had the ability to grant Plaintiff the loan modification.

67. **Justifiable Reliance:** Plaintiff was justified in his reliance on the representation of SERVICER'S employees/agents/representatives because SERVICER was the servicer of the Subject Loan. Further, Plaintiff actually relied on the representations of SERVICER as he continued his attempts to obtain a loan modification from SERVICER.

68. **Result of Plaintiffs' Reliance:** As a result of Plaintiff's reliance on SERVICER'S Plaintiff continued his attempts to obtain a loan modification from SERVICER instead of exploring other options that may have enabled them to make their monthly mortgage payments.

69. **Causation and Damages:** As a proximate result of Defendant's conduct in violating their promises and representations to Plaintiff, Plaintiff has suffered injury, damage to his credit, increased interest and arrears that he would not have otherwise incurred, and has been forced to pay legal fees and expenses in excess of. Further, Plaintiff lost title to the Subject Property and

now faces losing possession of the Subject Property. Plaintiff has suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

70.    **Misrepresentation #2:** SERVICER represented that Plaintiff could apply for and would be eligible for a HAMP loan modification and then stated that Plaintiff was denied on the basis that they had been previously granted a HAMP loan modification.

    i.   Who made the representation:

        1.   Who: SERVICER and SERVICER'S representatives/employees/agents.

        2.   Employer: SERVICER

        3.   Title, capacity, or role of the person: employee/representative/agent of SERVICER.

    ii.   Authority to speak: Employee/Representative/Agent of SERVICER was given authority from SERVICER.

    iii.   How or by what means was the representation made: verbally.

    iv.   When was the representation made: In or about December 27, 2012.

    v.   Where was the representation made: Over the phone between Plaintiff and SERVICER'S employees/agents/representatives.

    vi.   To whom was the representation made: to Plaintiff and Plaintiff's wife.

b.   **What was false or misleading about the representation:** Plaintiff was previously given a HAMP trial plan and then was told that he had to accept the Backup mod with terms that were less favorable than HAMP. Furthermore, the Federal Government amended the HAMP program, effective June 1, 2012 to allow borrowers who had previously applied for and were denied a HAMP modification to re-apply for a HAMP modification after 12 months. Plaintiff's previous HAMP denial, as stated above, was on or about July 14, 2010, more than two years earlier.

c.   **The materiality of the false representation:** The misrepresentation was material because it concerned the Subject Loan, the Subject Property and Plaintiff's ability to obtain a modification for the Subject Loan.

71. **Knowledge of Falsity:** The above representation was made with reckless disregard for the truth as SERVICER'S representatives knew or should have known that Plaintiff had never received a permanent HAMP loan modification and even if they had, would have been eligible to re-apply for a HAMP according to the amended HAMP guidelines.

72. **Intent to Induce Reliance:** SERVICER intended to induce Plaintiff's reliance so Plaintiff would remain delinquent on his Subject Loan payments thus enabling SERVICER to maintain its status as a "special servicer" which would in turn enable them to collect additional servicing costs. SERVICER and their representatives knew that Plaintiff would rely on the representations because SERVICER was the servicer of the Subject Loan and had the ability to grant Plaintiffs the loan modification.

73. **Justifiable Reliance:** Plaintiff was justified in his reliance on the representation of SERVICER'S employees/agents/representatives because SERVICER was the servicer of the Subject Loan. Further, Plaintiff actually relied on the representations of SERVICER as he continued his attempts to obtain a loan modification from SERVICER.

74. **Result of Plaintiffs' Reliance:** As a result of Plaintiff's reliance on SERVICER'S representations Plaintiff continued his attempts to obtain a loan modification from SERVICER instead of exploring other options that may have enabled them to make their monthly mortgage payments.

75. **Causation and Damages:** As a proximate result of Defendant's conduct in violating their promises and representations to Plaintiff, Plaintiff has suffered injury, damage to his credit, increased interest and arrears that they would not have otherwise incurred, and has been forced to pay legal fees and expenses in excess of. Further, Plaintiff lost title to the Subject Property and now faces losing possession of the Subject Property. Plaintiff has suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

76. **Misrepresentation #3:** SERVICER'S agent, employee or representative Alex W19 stated that there was no foreclosure sale date when, in fact, Plaintiff's Subject Property was scheduled to be sold on June 25, 2013.

     1. Who: SERVICER and SERVICER'S representatives/employees/agents Alex W19.

     2. Employer: SERVICER

     3. Title, capacity, or role of the person: employee/representative/agent of SERVICER.

  ii. Authority to speak: Employee/Representative/Agent of SERVICER was given authority from SERVICER.

  iii. How or by what means was the representation made: verbally.

  iv. When was the representation made: On or about June 11, 2013.

  v. Where was the representation made: Over the phone between Plaintiff and SERVICER'S employees/agents/representatives.

  vi. To whom was the representation made: to Plaintiffs

b. **What was false or misleading about the representation:** The Subject Property was scheduled to be sold on June 25, 2013.

c. **The materiality of the false representation:** The misrepresentation was material because it concerned the Subject Property and Plaintiff's ability to postpone the sale.

77. **Knowledge of Falsity:** The above representation was made with reckless disregard for the truth as SERVICER'S representatives knew or should have known that Plaintiff had a sale date Scheduled for June 25, 2013.

78. **Intent to Induce Reliance:** SERVICER intended to induce Plaintiff's reliance so Plaintiffs would refrain from taking action that would have postponed the sale. Plaintiff could have hired an attorney or could have taken legal action on behalf of themselves to stop the sale.

79. **Justifiable Reliance:** Plaintiff was justified in their reliance on the representation of SERVICER'S employees/agents/representatives because SERVICER was the servicer of the Subject Loan. Further, Plaintiff actually relied on the representations of SERVICER as they continued his attempts to obtain a loan modification from SERVICER.

80. **Result of Plaintiffs' Reliance:** As a result of Plaintiff's reliance on SERVICER'S Plaintiff continued their attempts to obtain a loan modification from SERVICER instead of exploring other options that may have enabled them to postpone the trustee's sale of the Subject Property.

81. **Causation and Damages:** As a proximate result of Defendant's conduct in violating their promises and representations to Plaintiff, Plaintiff has suffered injury, damage to his credit, increased interest and arrears that they would not have otherwise incurred, and has been forced to pay legal fees and expenses in excess of. Further, Plaintiff lost title to the Subject Property and now faces losing possession of the Subject Property. Plaintiff has suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

82. Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiff, and with knowledge that their conduct was substantially certain to vex, annoy, and injure Plaintiff. Plaintiff is therefore entitled to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of Defendants.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (Against SERVICER, BANK, and DOES 1-50, Inclusive)

83. Plaintiff incorporates each of the paragraphs set forth above and below as though fully set forth herein.

84. **Misrepresentation of Material Fact:** SERVICER made various misrepresentations to Plaintiff including representing that (1) Plaintiff's loan modification was incomplete and denying them on that basis, when in fact Plaintiff had submitted a complete modification application; (2) SERVICER represented that Plaintiffs would apply and would be eligible for a HAMP loan modification and then denied Plaintiffs because they had already been

given a HAMP loan modification which was false; and (3) SERVICER represented that there was no foreclosure sale date scheduled when in fact there was a sale date scheduled.

85.   **No Reasonable Ground for Believing the Truth of the Representation:** SERVICER knew or should have known that the representations were false as SERVICER was charged with working with Plaintiffs during the loan modification process and had the requisite knowledge.

86.   **Intent that Plaintiff Rely:** SERVICER intended Plaintiff to rely on its representations. Upon information and belief, Plaintiff alleges SERVICER made additional compensation as a result of servicing a delinquent account.

87.   **Justifiable Reliance:** Plaintiff was justified in his reliance on SERVICER'S representations as SERVICER was the servicer of his account and the ability to grant or deny a loan modification.

88.   **Causation and Damages:** As a proximate result of Defendant's conduct in violating their promises and representations to Plaintiffs, Plaintiffs have suffered injury, damage to their credit, increased interest and arrears that they would not have otherwise incurred, and have been forced to pay legal fees and expenses in excess of. Further, Plaintiffs lost title to the Subject Property and now face losing possession of the Subject Property. Plaintiffs have suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(Against SERVICER, BANK and DOES 1-50, Inclusive)**

89.   Plaintiff incorporates each of the paragraphs set forth above and below as though fully set forth herein.

90.   **Contract:** Plaintiff and SERVICER entered into a HAMP loan modification agreement. Plaintiff made all of the required trial plan payments under the agreement. Upon

completion of the Agreement Plaintiff was presented with the Backup mod with terms that were outside of HAMP guidelines.

91.     **Excuse for Non-Performance:** Plaintiff performed under the loan modification agreement until the payments, which were based on inaccurate income and outside of HAMP guidelines, until they were no longer able to afford them.

92.     **Breach:** SERVICER breached the agreement by failing to grant Plaintiff a HAMP loan modification with mortgage payments that were based on Plaintiff's true income and that were within the guidelines of HAMP. SERVICER further breached the agreement by failing to grant Plaintiff a permanent HAMP loan modification and by inducing Plaintiff to accept the Backup modification.

93.     **Damages:** As a proximate result, Plaintiff has suffered damages as a result of SERVICER'S breach of the loan modification agreement in that Plaintiff now faces the imminent loss of both title and possession of the Subject Property. Further, Plaintiff spent time and money engaging in the modification process and gave Defendants access to personal financial data that Defendants were otherwise not entitled to receive. Plaintiff lost the Subject Property at a trustee's sale and have suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**Promissory Estoppel**
**(Against SERVICER, BANK and DOES 1-50, Inclusive)**

94.     Plaintiff incorporates by reference each of the allegations set forth above as though fully set forth herein.

95.     **Promise:** SERVICER promised Plaintiff a HAMP loan modification in or about 2010 and further promised not to foreclose on Plaintiff while he was being reviewed for a loan modification.

96.     **Breach:** SERVICER breached the agreement by failing to grant Plaintiff a HAMP loan modification with mortgage payments that were based on Plaintiff's true income and that

were within the guidelines of HAMP. SERVICER further breached the agreement by failing to grant Plaintiff a permanent HAMP loan modification and by inducing Plaintiff to accept the Backup modification. SERVICER further breached by foreclosing on the Subject Property without properly notifying Plaintiff of the sale and by selling the Subject Property while Plaintiff was under review for a loan modification.

97.   **Actual Reliance:** Plaintiff relied on SERVICER'S promise by following all of SERVICER directives concerning the loan modification and by refraining from taking action on their own which would have postponed or stopped the illegal trustee's sale from occurring.

98.   **Reasonable and Foreseeable Reliance:** Plaintiff's reliance was reasonable and foreseeable because SERVICER was the servicer of the Subject Loan. SERVICER had the power to grant Plaintiff a loan modification and to cancel or postpone the sale.

99.   **Detrimental Reliance:** Plaintiff relied to his detriment by continuing his attempts to obtain a loan modification instead of taking other actions that would have postponed or stopped the trustee's sale from occurring.

100.   **Injustice can only be Avoided by Enforcement of the Promise:** Injustice can be avoided by forcing SERVICER to rescind the Trustee's Deed Upon Sale, by transferring title of the Subject Property back to Plaintiff and by granting Plaintiff a loan modification according to his true income and according to HAMP guidelines.

101.   **Causation and Damages:** Plaintiff has suffered damages as a result of his reliance on SERVICER'S representations and promises in that Plaintiff was not granted the promised loan modification and accumulated excess arrearages, late fees and penalties, Plaintiff forwent seeking other remedies and spent time money and energy in their attempts to obtain a loan modification. Plaintiff suffered the loss of title of the Subject Property and suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

# FIFTH CAUSE OF ACTION
### Negligence
### (As Against Defendants SERVICER, BANK and Does 1-50, Inclusive)

102.    Plaintiff incorporates by reference the allegations set forth above and below.

103.    SERVICER had a duty to act reasonably during the processing of Plaintiff's loan modification application. SERVICER had a duty for the following reasons (Additionally, Plaintiff has alleged that SERVICER is merely the Servicer of the Subject Loan and was not the Lender at the time of his efforts to obtain a modification):

(1) The transaction was intended to benefit Plaintiff- All of the transactions regarding modifications were intended to benefit Plaintiff. Plaintiff was in need of a loan modification so that he could afford to stay current in their monthly mortgage payments.

(2) Foreseeability of harm to Plaintiff- It was foreseeable that if SERVICER acted unreasonably in the processing of Plaintiff's loan application then Plaintiff would be harmed as SERVICER knew that the transaction effected Plaintiff's ability to pay his mortgage.

(3) Degree of certainty that Plaintiff suffered injury- Plaintiff has suffered injury in that he forewent seeking other remedies, accumulated excess arrears and penalties. Further, Plaintiff lost title of the Subject Property through foreclosure.

(4) Closeness of the connection between Defendant's conduct and the harm suffered- If SERVICER had not acted unreasonably during the loan modification process, Plaintiff would have been able to seek other remedies and may have been able to avoid foreclosure proceedings.

(5) Moral blame attached to Defendant's conduct- SERVICER is to blame for acting unreasonably in the modification process. As a result of SERVICER'S actions, Plaintiff lost title and possession of the Subject Property.

(6) Policy of preventing future harm- The Court should prevent future harm by holding SERVICER liable for its unreasonable conduct in processing Plaintiff's loan modifications.

104.   SERVICER breached its duty to Plaintiff by failing to accurately calculate Plaintiff's income which resulted in their denial of a HAMP loan modification in 2010. Further, SERVICER failed to evaluate Plaintiff in a reasonable manner by misplacing or losing Plaintiff's loan modification application, by failing to appoint a single point of contact, by telling Plaintiff he was ineligible for a HAMP loan modification in 2012, and by selling the Subject Property while Plaintiff was in review for a loan modification.

105.   As a proximate result of SERVICER's conduct in violating their promises and representations to Plaintiff, Plaintiff has suffered injury, damage to their credit, increased interest and arrears that they would not have otherwise incurred, forewent seeking other remedies and solutions, have incurred legal fees and costs, and lost the Subject Property. Plaintiff has suffered further damages all within an amount that is within the jurisdiction of this court and will be shown according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### Unlawful Business Practices in Violation of Bus. & Prof. Code §17200, et seq.
### (As Against Defendants SERVICER, BANK, TRUSTEE and DOES 1-50, Inclusive)

106.   Plaintiff incorporates by reference the allegations set forth above and below as though fully set forth herein.

107.   Plaintiff alleges that the unlawful acts and practices of Defendants alleged herein constitute unlawful or unfair business practices within the meaning of California Business and Professions Code §17200, et seq.

108.   Specifically, Defendants have violated Cal. Civ. Code §§2923.6, 2923.7 and 2924. Further, Defendants have may material misrepresentations affecting Plaintiff's interest in the Subject Property and committed numerous acts of negligence in the handling and processing of Plaintiff's loan modification applications. Defendants sold Plaintiff's Subject Property in contravention of the recently enacted Home Owner's Bill of Rights.

109.     By engaging in the above-described acts and practices which include intentionally misleading Plaintiff, to their detriment, Defendants engaged in acts likely to deceive Plaintiff and the general public in violation of California Business and Professions Code §17200, et seq.

110.     Further Defendants have acted in a manner that is both wrongful and likely to mislead members of the general public in their actions regarding Plaintiff's loan modification.

111.     As a result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer damages and injuries in an amount subject to proof at trial. Plaintiff has suffered actual injury, including an increasing amount of arrears, attorney's fees and costs of litigation. Plaintiff was induced to participate in the modification process instead of seeking other alternatives. Further, Plaintiff spent time and money engaging in the modification process and gave Defendants access to personal financial data that Defendants were otherwise not entitled to receive. Finally, Plaintiff lost the Subject Property in an illegal trustee's sale and has suffered further damages which will be shown according to proof at the time of trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### Equitable Accounting
### (Against Defendants BANK, SERVICER and DOES 1-50, Inclusive)

112.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

113.     Defendants owed and continue to owe Plaintiff a duty of good faith, fair dealing, and open and honest communication akin to a fiduciary duty. In addition, most or all evidence of the true fiscal relationship between the parties is within the possession of the Defendants.

114.     The entire indebtedness including the exact entity to which Plaintiffs are in debt, if Plaintiffs are in debt at all, is in dispute and in question.

115.     Under the circumstances, judicial determination and settlement of the accounts between the parties is necessary and appropriate, especially in light of the trial plan payments Plaintiffs made during the loan medication processes.

116.     As a direct and proximate cause of Defendants' wrongful acts and omissions, Plaintiffs have been damaged in an amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
Violation of Cal. Civ. Code §2923.6 (c)
**(Against SERVICER, BANK, TRUSTEE and DOES 1-50, Inclusive)**

117.     Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

118.     Pursuant to the Homeowner's Bill of Rights and the new Civil Code 2923.6 (c) that went into effect on January 1, 2013:

"(c) (1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."

119.     On or about March 20, 2013 Plaintiffs received confirmation, from SERVICER, that their complete loan modification application was received. On June 11, 2013, Plaintiffs were told by SERVICER that no sale of the Subject Property was scheduled. On June 25, 2013, a trustee's sale occurred and Plaintiffs lost title of the Subject Property.

120.     Despite the fact that Plaintiffs submitted a complete first lien loan modification application, Defendants continued to "dual track" Plaintiffs and proceeded to foreclose on the Subject Property as the Subject Property was sold on June 25, 2013.

121.     As a result of Defendants' violation, Plaintiffs have lost title of the Subject Property and face unlawful detainer proceedings and the possible loss of possession of the Subject Property. Plaintiffs have been forced to retain an attorney to enforce their rights. Plaintiffs have experienced further damages in an amount to be shown according to proof at the time of trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## NINTH CAUSE OF ACTION
### Violation of Cal. Civ. Code §2923.6 (c)
### (Against SERVICER, BANK, TRUSTEE and DOES 1-50, Inclusive)

122.    Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

123.    Cal. Civ. Code §2923.6 provides:

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

115. Plaintiff submitted a complete first lien loan modification on March 20, 2013.

116.    Plaintiff was told that the Subject Property did not have a sale date on June 11, 2013 by SERVICER and that they were still in review for a loan modification. However, on or about June 24, 2013, Plaintiff was told that their modification was denied and that the Subject Property would be sold on June 25, 2013.

117.  Plaintiff did not receive a denial letter and were not given a chance to appeal the findings.

118. As a result of the violation, Plaintiff was not given a chance to appeal SERVICER'S decision of denial and lost title to the Subject Property. Further, Plaintiff suffered damages in that they had to hire an attorney to enforce their rights and now risk loss of possession of the Subject Property and are facing unlawful detainer proceedings. Plaintiff has suffered further damages which will be determined according to proof at the time of trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## TENTH CAUSE OF ACTION
### Violation of Cal. Civ. Code §2923.7
### (Against SERVICER, BANK, TRUSTEE and DOES 1-50, Inclusive)

119.    Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

120.     Pursuant to Cal. Civ. Code §2923.7: (a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

121.     Throughout the loan modification process between January through June 2013, Plaintiffs worked with several different agents, employees or representatives of SERVICER. Plaintiffs were not given a single point of contact and were often times unable to establish contact with SERVICER'S agents, employees and representatives who were assigned to work on Plaintiffs' loan modification application.

122.     As a result, Plaintiffs experienced delays in the processing of their loan modification application and spent additional and unnecessary time, energy and resources in their attempts to obtain a loan modification. The lack of a single point of contact was a contributing factor in their denial of the loan modification and of the foreclosure sale that occurred. Plaintiffs lost title to the Subject Property and now face unlawful detainer proceedings and eviction. Plaintiffs suffered further damages in an amount to be shown according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION
### Violation of Cal. Civ. Code §2924
### (Against SERVICER, BANK, TRUSTEE and DOES 1-50, Inclusive)

123.     Plaintiffs incorporate by reference the allegations set forth above and below as though fully set forth herein.

124.     Civil Code 2924 exclusively limits who has authority to issue a Notice of Default as follows:

> "Where, by a mortgage …. of any estate in real property, …
> a power of sale is conferred upon the mortgagee, trustee, or
> any other person, to be exercised after a breach of the
> obligation for which that mortgage or transfer is a security…
> (1) The trustee, mortgagee, or beneficiary, or any of their
> authorized agents shall first file for record, in the office of the
> recorder of each county wherein the mortgaged or trust property or
> some part or parcel thereof is situated, a notice of default."

125.    A notice of default ("NOD") is null and void if issued by any person or entity other than those described in CC 2924. Whether a party holds the status of any of the above referred to capacities is governed and restricted by the terms of the Note and Deed of Trust and the capacities of the parties to those documents.

126.    Plaintiffs have alleged that the Assignment of Deed of Trusts are void because, according the Subject PSA, the Subject Note, Deed of Trust and Loan were transferred to a securitized trust.

127.    Because the Assignment of Deed of Trusts are void the Notice of Default and Trustee's Deed Upon Sale is void as well and the foreclosure is wrongful as Defendants do not have the requisite power or authority to foreclose upon the Subject Property.

128.    Plaintiff alleges that prejudice is not required as the Assignment of Deed of Trust and all foreclosure documents are void. However, Plaintiff alleges that he has been prejudiced in that the original lender would have modified the Subject Loan because it would have been more profitable than to foreclose. Plaintiff will suffer further prejudice if the true beneficiary later attempts to collect on the Note.

129.    As a result of the above described actions, Plaintiff has lost title to the Subject Property and thus potentially risk exposure if the true beneficiary later attempts to collect the debt from Plaintiffs. Presently, it is patently unclear who actually has the authority and the right to foreclose upon the Subject Property. Plaintiff has suffered damages in that he has had to expend legal fees and costs and has suffered further damages in an amount to be shown according to proof at the time of trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

### TWELFTH CAUSE OF ACTION
**Equitable Action to Set Aside Sale**
**(Against SERVICER, BANK, TRUSTEE and DOES 1-50, Inclusive)**

130.    Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

131.   **Illegal, Fraudulent or Willfully Oppressive Sale:** The Subject Trustee's sale was illegal, fraudulent and willfully oppressive. The sale was conducted in contravention of Cal. Civ. Code §§2923.6, 2923.7 and 2924.18. Further, the sale was willfully oppressive as Plaintiff was told two weeks earlier that no sale date was scheduled and were not informed until June 24, 2013, the day before the sale, that the property was scheduled to be sold on June 25, 2013.

132.   **Plaintiffs Suffered Harm and Prejudice as a Result of the Sale**: Plaintiff has suffered harm and prejudice as the sale occurred and he has now lost title to the Subject Property.

133.   **Plaintiffs are Excused from Tendering**: Plaintiff should be excused from tendering as the Subject Sale violated Cal. Civ. Code §§2923.6, 2923.7 and 2924. Plaintiff has alleged a counterclaim and set-off against Defendants and, under the circumstances of this case, it would be inequitable to require Plaintiff to tender.

134.   **Damages**: As a result of Defendants' actions and the illegal, fraudulent and willfully oppressive sale, Plaintiff has lost title of the Subject Property and now faces unlawful detainer proceedings. Plaintiff was forced to retain an attorney and have suffered further damages in an amount to be shown according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment as follows:

a.    For compensatory damages in an amount to be determined by proof at trial;

b.    For special damages in an amount to be determined by proof at trial;

c.    For general damages in an amount to be determined by proof at trial;

d.    For punitive damages;

e.    For an order setting aside the sale of the Subject Property and an order returning title of the Subject Property to Plaintiffs;

f.  For attorney's fees and costs of this action pursuant to Cal. Civ. Code §2924 et seq.;

g.  For a statutory damages pursuant to Cal. Civ. Code  §2923.6 et seq.;

h.  For any prejudgment or other interest according to law; and

i.  For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

JURY TRIAL DEMANDED

DATED: October 21, 2013

**UNITED LAW CENTER**
A Professional Law Corporation


By:  /S/ John S. Sargetis
John S. Sargetis,
Attorney for Plaintiffs

EXHIBIT "A"

Reference #: 1006773608T4062

Loan # : 327517379

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: 2/1/2010
Borrower ("I")[1]: Jason J Deschaine
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 12/7/2005
Loan Number: 1006773608
Property Address ("Property"): 10684 Bonanza Way, Rough And Ready, CA 95975

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.  **My Representations**. I certify, represent to Lender and agree:

    A.  I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

    E.  Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct;

    F.  If Lender requires me to obtain credit counseling, I will do so; and

    G.  If this debt was discharged in a bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 1 of 4 pages)

17

Reference #: 1006773608T4062

2.   **The Trial Period Plan.**  On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $314.83.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 * | $1,790.15 | 2/1/2010* |
| 2 | $1,790.15 | 3/1/2010 |
| 3 | $1,790.15 | 4/1/2010 |

*handwritten annotations to right of table:*
- — *need to w/need Paper-work*
- — 3677603 conf #2/25/0?
- → 3717407 conf # 3/30/0?
- — 3749967 conf # 4/29/10

*handwritten additional row below table:* 1790.15   5/1/2010

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 2/1/2010 or I may not be accepted into the Home Affordable Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

B.   Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. All rights to such notices are hereby waived by me to the extent permitted by applicable law;

C.   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur.  If a foreclosure sale occurs pursuant to this Section 2.C., this plan shall be deemed terminated;

D.   The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.   When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.   If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 2 of 4 pages)

18

Reference #: 1006773608T4062

G.  I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from the other lien holders, as Lender determines necessary.

3.    **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e. on the first day of the month following the month in which the last Trial Period Payment is due).

4.    **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); (iii) or the Lender has waived this requirement in writing.

B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.  If Lender may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Lender will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 6/09) (page 3 of 4 pages)

19

Reference #: 1006773608T4062

D.   That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

E.   That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.

F.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

G.   That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

H.   Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"). I agree to abide by all terms and provisions of this Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $1,790.15 no more than 30 days after the last due date listed in the chart in Section 2 above.

In Witness Whereof, the Lender and I have executed this Plan.

IndyMac Mortgage Services,
a division of OneWest Bank, FSB
Lender

_____ (Seal)
Jason J Deschaine

1 / 4 / 20 10
Date

By: _____          _____ (Seal)

_____          _____
Date                                        Date

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 4 of 4 pages)

20

EXHIBIT "B"



**IndyMac Mortgage Services**

a division of OneWest Bank®, FSB

Jason J Deschaine
P.O. Box 753
Rough And Ready, CA 95975

*Track #*
*1Z 1419 1522 1465 170*

*Aug 17, 2010  (Received)*

Loan Number: 1006773608
Reference Number: 1006773608T4062
Investor Loan No.: 327517379

*conF #   3876236   Pd 8/30/2010*
*2*
*1782.56 (Inc 5. Fee)*

July 14, 2010

Dear Jason J Deschaine,

We want to continue to work with you to modify your mortgage and help make your payments more affordable. Unfortunately, we were unable to approve your request for a permanent loan modification under the government's Home Affordable Mortgage Program (HAMP), because:

We are unable to offer you a Home Affordable Modification because your current monthly housing expense, which includes the monthly principal and interest payment on your first lien mortgage loan plus property taxes, hazard insurance and homeowner's dues (if any) is less than 31% of your gross monthly income (your income before taxes and other deductions). The income used in our calculation was $9,041.42. Your housing expense must be greater than 31% of your gross monthly income to be eligible for a Home Affordable Modification. If you believe the income used in this calculation is incorrect please contact us at the number provided below.

**Freddie Mac Backup Modification**
The good news—you may be eligible for another option, a Freddie Mac Backup Modification offered by Freddie Mac (the owner of your loan). This modification is designed for borrowers, like you, who have made all of their HAMP trial period payments but for some reason did not meet all of the eligibility criteria for conversion to a permanent modification under HAMP.

With a Freddie Mac Backup Modification, you would continue to make the same payments you made during the HAMP trial period and your modified payment/payment terms should be the same (see the Loan Modification Agreement for specific terms/payment information). Note: A Freddie Mac Backup Modification does not offer the annual $1,000 HAMP borrower incentive compensation.

**To see if you qualify for a Freddie Mac Backup Modification:**
- ■ Completely fill out, sign (if applicable) and return the following items in the enclosed envelope so that it will **be received by IndyMac Mortgage Services, a division of OneWest Bank®, FSB no later than 8/16/2010:**
  - ❑ Enclosed **Loan Modification Agreement**, executed by all borrowers
  - ❑ Enclosed **ACH Agreement** (not required, but recommended to ensure timely and automatic payments)
- ■ Call 1.800.221.9215 with any questions

Once we receive your information, we will review and determine eligibility. If you qualify, we will permanently modify your mortgage according to the terms of the enclosed Loan Modification Agreement. Don't delay—our goal is to help you remain in your home and avoid foreclosure, but you must act now to take advantage of this offer.

Sincerely,

**Brandon Latman**
First Vice President
IndyMac Mortgage Services, a division of OneWest Bank®, FSB
1.800.221.9215

*In this Packet:*

1. **HAMP Decline Reason** details why you were declined for a HAMP modification

2. **FAQs** explain key program information

3. **Loan Modification Agreement** contains important terms and conditions—review, complete, sign, and return

4. **ACH Agreement** shows how to sign up for automatic payments should you choose

*Rebecca   10/25/2010*
*$1777.56 PAid*
*conF #*
*2980110492S*

## Frequently Asked Questions (FAQs)

1. **What is a Freddie Mac Backup Modification?**
   Freddie Mac Backup Modification offers you the ability to *permanently* modify your loan—helping to make your mortgage more affordable for the life of the loan. The Freddie Mac Backup Modification was created as an additional loan modification option, and is available to borrowers who initially qualified for the Home Affordable Modification Program (HAMP) Trial Period Plan, but were unable (for some reason) to qualify for a permanent modification under HAMP. With a Freddie Mac Backup Modification, you still have an opportunity to modify your loan and the modified terms/mortgage payment **should be the same as they would have been under HAMP.**

2. **Why are you offering me this option?**
   Because you were unable to receive a permanent HAMP modification, but you have made the required payments under the HAMP Trial Period Plan, we want to continue to work with you to determine a long-term solution. We know many homeowners are struggling with their mortgage payments and need assistance. That's why we are offering you the opportunity to qualify for a Freddie Mac Backup Modification. Our goal is to help make your mortgage more affordable, and most importantly, help you remain in your home and avoid foreclosure.

3. **What are the benefits of a Freddie Mac Backup Modification?**
   A Freddie Mac Backup Modification offers you a permanent long-term solution to make your mortgage more affordable.

4. **Why was I not approved for the Home Affordable Modification Program (HAMP)...what happened?**
   Please review the HAMP Decline Reason included in this letter for the specific reason(s) as to why you did not qualify for a permanent HAMP modification.

5. **If I didn't qualify for a permanent modification under HAMP, will I qualify for a Freddie Mac Backup Modification?**
   The requirements for a Freddie Mac Backup Modification have been designed specifically to assist borrowers like you, who were unable to qualify for a permanent modification through HAMP. Because you have made your HAMP Trial Period Plan payments and have completed the HAMP Trial Period Plan, you are likely a candidate for a Freddie Mac Backup Modification. Once we have your required information, we will review to see if you are eligible.

6. **How do I qualify for a Freddie Mac Backup Modification/What do I need to do to get approved?**
   We want to make this as easy as possible for our homeowners. To begin the qualification process, review the **HAMP Backup Modification Agreement**, included in this package, and return back to us by the specified date.

7. **Why do I need to sign another Loan Modification Agreement...I already did this for HAMP?**
   Freddie Mac Backup Modification is a new loan modification option offered by Freddie Mac (the owner of your loan). It is not a part of the government's loan modification program, HAMP. While it was created for borrowers who were not approved for HAMP—and your terms and payment amount should be the same as that of HAMP—this option is separate and has its own requirements/program documentation. All eligible borrowers who want to accept the terms of a Freddie Mac Backup Modification, must read, agree, and sign a new Loan Modification Agreement.

8. **I am currently paying the trial period payment that was specified under HAMP. Do I keep paying this same amount? Will my payment change if I get a Freddie Mac Backup Modification?**
   Yes, keep paying the same payment amount you were paying during the HAMP Trial Period. If you are eligible for a Freddie Mac Backup Modification, your payment should stay the same. The HAMP Backup Modification Agreement will specify your payment amount and when your payments are due.

IndyMac Mortgage Services, a division of OneWest Bank®, FSB
Home Loan Servicing
6900 Beatrice Drive
Kalamazoo, MI 49009

## Automatic Mortgage Payment Transfer Authorization

Loan number_____ Name _____

Property Address _____

City, State, Zip Code_____

Daytime Phone Number_____

This service is free if your payment is drafted within five days after your due date. If it is after this date, there is a $2.50 *fee* per payment. The amount authorized to be transferred each month will be the amount of the regular payment plus any applicable fees. If the amount of the regular payment changes based on the terms of the Note, the required escrow (tax and/or insurance) payments, or as a result of other changes, the automatic payment will change accordingly. *OneWest Bank® will send written notification of a change to the payment amount at least ten days prior to the payment date.*

❑ Debit Checking Account                 ❑ Debit Savings Account

Bank Name _____       Monthly Payment Amount _____

Account Number_____       Additional Principal** _____

Routing Number _____       Total Monthly Payment_____

First Draft Date* _____

### Please include a voided check or savings account pre-printed deposit slip

\* If the date is not entered, the payment will draft on the first of each month
\*\* The Additional Principal amount will be drafted each month with your regular payment

I request and authorize OneWest Bank, FSB®, its successors and/or assigns, as my agent to transfer funds from my Checking or Savings account to the loan designate. Either OneWest Bank® or I can terminate this authorization or stop payment at any time by giving written or verbal notice to the other party at least three business days prior to the payment date.

X _____
     Authorized Signature

### Payment Information:

Please ensure sufficient funds are available on the payment date. If your payment is due on a weekend or holiday, the payment will be made on the next business day. If there are insufficient funds in your account when the payment is attempted, a fee will be charged and your payment will be counted as past due. OneWest Bank® will make one attempt to draft your payment. If there are insufficient funds, you are responsible to send replacement funds through a certified check or personal check, including any fees or penalties to pay the total amount due. If your loan is delinquent or prepaid, the automatic payment will not occur until your loan returns to a current status.

This program is not available to some Credit Unions, or with Money Market or Business Accounts. Your bank must be a member of the Federal Reserve.

**Please continue to make your monthly payments until you receive written notification of the date when your first payment will occur. Please allow approximately thirty (30) days to verify your information and process this request.**

If you believe a payment is incorrect or are in need of additional information about an automatic payment, please contact OneWest Bank® at 1-800-781-7399. Representatives are available to assist you Monday through Friday 8:00 am until 9:00 pm Eastern Standard Time. You may also visit our website at www.onewestbank.com and log into My Mortgage for assistance. If you do suspect an error, please report it to OneWest Bank® within 60 days of the date of the first statement in which the error occurred.

BY MAIL:                                      BY FAX:
OneWest Bank – Home Loan Servicing            269-353-2493
ATTN: ACH
P.O. Box 4045
Kalamazoo, MI 49003-4045


**FDIC**
Member

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
-Lender

By: _____

Date: _____

_____ (Seal)       Date_____
Jason J Deschaine

_____ (Seal)       Date_____

_____
Mortgage Electronic Registration
Systems, Inc. – Nominee for Lender

_____[Space Below This Line For Acknowledgment]_____

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie
Mac 5/10 *(page 11 of 12 pages)*

terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."   I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

after execution of this Agreement.   I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L.      Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the Mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.      That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan, this Modification Agreement and any other agreement with the Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); and (b) any HUD certified housing counselor.

N.      I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10 *(page 8 of 12 pages)*

period of not less than 30 days from the date the notice
is delivered or mailed within which I must pay all sums
secured by the Mortgage.   If I fail to pay these sums prior
to the expiration of this period, Lender may invoke any
remedies permitted by the Mortgage without further
notice or demand on me.

H.   That, as of the Modification Effective Date, I understand
that the Lender will only allow the transfer and assumption
of the Loan, including this Agreement, to a transferee of
my property as permitted under the Garn St. Germain Act,
12 U.S.C. Section 1701j-3.   A buyer or transferee of the
Property will not be permitted, under any other
circumstance, to assume the Loan.   Except as noted
herein, this Agreement may not be assigned to, or
assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision
in the Note or in any addendum or amendment to the Note
allowed for the assessment of a penalty for full or partial
prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title
endorsement(s), or similar title insurance product(s),
and/or subordination agreement(s) that are necessary or
required by the Lender's procedures to ensure that the
modified mortgage loan is in first lien position and/or is
fully enforceable upon modification and that if, under any
circumstance and not withstanding anything else to the
contrary in this Agreement, the Lender does not receive
such title endorsement(s), title insurance product(s)
and/or subordination agreement(s), then the terms of this
Agreement will not become effective on the Modification
Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be
reasonably necessary to either (i) consummate the terms
and conditions of this Agreement; or (ii) correct the terms
and conditions of this Agreement if an error is detected

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie
Mac 5/10 (page 7 of 12 pages)

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10 *(page 6 of 12 pages)*

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan.   My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements.**   I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased and I have provided the documentation requested by the Lender to verify this; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents) and I have provided the documentation requested by the Lender to verify this; or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other agreement that I previously entered into with Lender.

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10 *(page 5 of 12 pages)*

Lender but not previously credited to my Loan.   The
new principal balance of my Note will be $356,787.09
(the "New Principal Balance").  I understand that by
agreeing to add the Unpaid Amounts to the
outstanding principal balance, the added Unpaid
Amounts will accrue interest based on the interest
rate in effect under this Agreement. I also understand
that this means interest will now accrue on the unpaid
interest that is added to the outstanding principal
balance, which would not happen without this
Agreement.

C.     Interest at the rate of 3.750% will begin to accrue on the
New Principal Balance as of 8/1/2010 and the first new
monthly payment on the New Principal Balance will be
due on 9/1/2010. My payment schedule for the modified
loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 5 | 3.750% | 8/1/2010 | $1,460.47 | $317.09 | $1,777.56 | 9/1/2010 | 60 |
| 6 - 39 | 4.625% | 8/1/2015 | $1,635.85 | may adjust periodically | may adjust periodically | 9/1/2015 | 402 |

*The escrow payments may be adjusted periodically in accordance with
applicable law and therefore my total payments may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the
contrary in the Loan Documents, including but not limited to, provisions for
an adjustable, step, or daily simple interest rate.

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie
Mac 5/10 (page 4 of 12 pages)

**DESCHAINE v. INDYMAC MORTGAGE SERVICES, ET AL.**
**United States District Court – Eastern District – Sacramento Division**
**CASE NO.: 2:13-cv-01991-WBS-CKD**

# CERTIFICATE OF SERVICE

**I, Mojan Rogers, certify and declare as follows:**

I am over the age of 18 years and not a party to this action.

My business address is, 3013 Douglas Blvd., Suite 200, Roseville, California, 95661.

This **FIRST AMENDED COMPLAINT FOR 'DAMAGES'** filed through the ECF system was previously sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the 21st day of October, 2013.

I delcare under penalty of perjury that the foregoing is true and correct.

UNITED LAW CENTER
A Professional Law Corporation

By:                     /S/ Mojan Rogers
                  Mojan Rogers, Paralegal