UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JASON DESCHAINE,

        Plaintiff,

    v.

INDYMAC MORTGAGE SERVICES, A
DIVISION OF ONEWEST BANK,
FSB; FEDERAL HOME LOAN
MORTGAGE CORPORATION; and
DOES 1 through 50, inclusive,

        Defendants.

NO. CIV. 2:13-1991 WBS CKD

MEMORANDUM AND ORDER RE: MOTION
TO DISMISS

----oo0oo----

        Plaintiff Jason Deschaine brought this action against defendants IndyMac Mortgage Services, a division of OneWest Bank, FSB ("IndyMac") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") arising out of the foreclosure of his home. Defendants now move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

1

1  I.    Factual & Procedural History

2          In 2005, plaintiff entered into a mortgage loan for

3  $310,000, which was secured by a Deed of Trust to his home in

4  Rough and Ready, California.  (IndyMac Req. for Judicial Notice

5  ("IndyMac RJN") Ex. A (Docket No. 10).)  On January 26, 2009,

6  Trustee Corps, a foreclosure trustee, recorded a Notice of

7  Default against plaintiff's home stating that plaintiff was

8  $17,901.804 in arrears on his mortgage payments.  (Id. Ex. B.)

9  Later that year, plaintiff contacted IndyMac, the servicer of

10  plaintiff's mortgage loan, about the possibility of applying for

11  a loan modification.  (First Am. Compl. ("FAC") ¶ 15 (Docket No.

12  22).)   Plaintiff initiated an application for a HAMP loan

13  modification[1] in September 2009 and entered into a trial loan

14  modification plan ("TPP") in February 2010.  (Id. ¶¶ 16-18.)

15          Plaintiff began making payments under the TPP, but

16  received notice from IndyMac in July 2010 that he was ineligible

17  for a permanent HAMP loan modification because his mortgage

18  payments were less than thirty-one percent of his monthly income.

19  (Id. ¶¶ 19-20.)  IndyMac invited plaintiff to apply for a Freddie

20  Mac Backup Modification, under which plaintiff could continue to

21  make payments on the mortgage.  (Id. ¶ 20, Ex. B.)  Plaintiff

22  attempted to make payments under the Backup Modification for

23  approximately a year and a half, but fell behind on his payments

24  again.  (Id. ¶ 23.)  On June 13, 2012, Trustee Corps recorded

25  _____

26          [1]    HAMP is a program initiated by the Treasury Department
    in 2009 "to incentivize banks to refinance mortgages of
27  distressed homeowners so they could stay in their homes."
    Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878, 880 (9th Cir.
28  2013).

1   another NOD, reflecting an arrearage of $11,990.13.  (IndyMac RJN

2   Ex. D.)

3          On several occasions between April 2012 and June 2013,

4   plaintiff attempted to obtain an additional loan modification

5   from IndyMac.  (FAC ¶ 24.)  Plaintiff alleges that IndyMac

6   repeatedly declined to offer him a loan modification, either

7   because IndyMac claimed that plaintiff's application was

8   incomplete or because plaintiff was ineligible for a loan

9   modification.  (Id. ¶¶ 25-30.)

10         Plaintiff then filed for bankruptcy on February 25,

11  2013.  (Id. ¶ 31; IndyMac RJN Ex. E.)  Plaintiff obtained a

12  discharge in bankruptcy on June 3, 2013.  (IndyMac RJN Ex. F.)[2]

13  Although plaintiff did not disclose any of the claims he asserts

14  in this lawsuit as assets in his bankruptcy filings, (see FAC ¶¶

15  49, 50; IndyMac RJN Ex. D), he alleges that he re-opened his

16  bankruptcy petition on October 29, 2013, to list these claims as

17  assets.  (Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") 9:16-18

18  (Docket No. 27).)

19         During the time his bankruptcy petition was pending,

20  IndyMac allegedly informed plaintiff that he could re-apply for a

21  loan modification.  (FAC ¶ 32.)  Plaintiff submitted a complete

22  loan application to IndyMac on March 20, 2013, as well as an

23

24  [2]    It is not explained in the pleadings, and it is unclear to
    this court why plaintiff's debt on his home loan was not
25  discharged in the bankruptcy proceeding.  But obviously it was
    not.  Apparently, the bankruptcy petition was filed in order to
26  avert the sale of plaintiff's home, which was scheduled for the
    next day.  It clearly accomplished that purpose, but not much
27  else, and after the discharge the parties simply returned to
    business as usual.
28

3

1    updated application on April 4, 2013.  (Id. ¶¶ 32-33.)  Between

2    April and June 2013, plaintiff alleges he "remained in constant

3    contact" with IndyMac and continued to send updated financial

4    documents when requested to do so.  (Id. ¶ 34.)

5            On June 11, 2013, an IndyMac employee named "Alex W19"

6    allegedly informed plaintiff that there was no foreclosure sale

7    scheduled, but that IndyMac required additional documentation in

8    order to process his application.  (Id. ¶ 35.)  Plaintiff then

9    alleges that on June 24, 2013, an IndyMac employee named "Albert

10   938" informed plaintiff that his home would be sold at a

11   foreclosure sale the next day.  (Id. ¶ 36.)  On June 25, 2013,

12   Freddie Mac purchased plaintiff's home at a trustee's sale.  (Id.

13   ¶ 38.)

14           Plaintiff filed this action in Nevada County Superior

15   Court on August 8, 2013, bringing ten claims against IndyMac,

16   Trustee Corps, and Freddie Mac.  (Not. of Removal Ex. A (Docket

17   No. 1).)  Defendants removed the action to this court pursuant to

18   12 U.S.C. § 1452(f), which entitles Freddie Mac to remove to

19   federal court any action to which it is a party.  (Id.)  On

20   October 21, 2013, plaintiff filed a First Amended Complaint

21   ("FAC"), which alleged, as is typical in this kind of case,

22   twelve separate claims for relief: (1) intentional

23   misrepresentation; (2) negligent misrepresentation; (3) breach of

24   contract; (4) promissory estoppel; (5) negligence; (6) violation

25   of the Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §

26   17200 et seq.; (7) equitable accounting; (8) "dual tracking" of

27   plaintiff's loan modification application in violation of

28   California Civil Code section 2923.6(c); (9) failure to issue

4

1 plaintiff an opportunity to appeal the denial of a loan

2 modification in violation of California Civil Code section

3 2923.6(d); (10) failure to appoint a single point of contact in

4 violation of California Civil Code section 2923.7; (11) violation

5 of California Civil Code section 2924; and (12) wrongful

6 foreclosure.[3]  On November 12, 2013, plaintiff stipulated to

7 dismiss Trustee Corps from the action with prejudice.  (Docket

8 No. 30.)  Defendants now move to dismiss the FAC pursuant to

9 Federal Rule of Civil Procedure 12(b)(6) for failure to state a

10 claim upon which relief can be granted.[4]  (Docket No. 9.)

11 II.  <u>Request for Judicial Notice</u>

12          In general, a court may not consider items outside the

13 pleadings when deciding a motion to dismiss, but it may consider

14 items of which it can take judicial notice.  <u>Barron v. Reich</u>, 13

15 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

16 notice of facts "not subject to reasonable dispute" because they

17 are either "(1) generally known within the territorial

18 jurisdiction of the trial court or (2) capable of accurate and

19 ready determination by resort to sources whose accuracy cannot

20 reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice

21 may properly be taken of matters of public record outside the

22 _____

23          [3]     Plaintiff styles this claim as an "equitable action to set aside sale," which is equivalent to a wrongful foreclosure

24 claim.  <u>See, e.g.</u>, <u>Castaneda v. Saxon Mortg. Servs, Inc.</u>, 687 F. Supp. 2d 1191, 1201 (E.D. Cal. 2009) ("Wrongful foreclosure is an

25 action in equity, where a plaintiff seeks to set aside a foreclosure sale.").  In the interest of brevity, the court will

26 refer to this claim as "wrongful foreclosure."

27          [4]     Although only IndyMac initially moved to dismiss, IndyMac and Freddie Mac later filed an amended notice clarifying

28 that they jointly moved to dismiss.  (Docket No. 23.)

1   pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504

2   (9th Cir. 1986).

3          Defendants request that the court judicially notice

4   several recorded documents pertaining to plaintiff's property,

5   including the Deed of Trust, (IndyMac RJN Ex. A), and three

6   Notices of Default, (id. Exs. B-D).  The court will take judicial

7   notice of these documents, since they are matters of public

8   record whose accuracy cannot be questioned.  See Lee v. City of

9   Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  The court will

10  also take judicial notice of plaintiff's bankruptcy court

11  filings, (see IndyMac RJN Exs. E-F), as they are likewise matters

12  of public record whose accuracy cannot be questioned.  See Rosal

13  v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1121 (N.D. Cal.

14  2009) (taking judicial notice of bankruptcy filings).

15  III. Discussion

16          On a motion to dismiss, the court must accept the

17  allegations in the complaint as true and draw all reasonable

18  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

19  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

20  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

21  (1972).  To survive a motion to dismiss, a plaintiff needs to

22  plead "only enough facts to state a claim to relief that is

23  plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

24  544, 570 (2007).  This "plausibility standard," however, "asks

25  for more than a sheer possibility that a defendant has acted

26  unlawfully," and where a complaint pleads facts that are "merely

27  consistent with" a defendant's liability, it "stops short of the

28  line between possibility and plausibility."  Ashcroft v. Iqbal,

1 | 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).

2 |     A.   Negligent & Intentional Misrepresentation

3 |         To state a claim for intentional misrepresentation, a

4 | plaintiff must allege: (1) a misrepresentation, (2) knowledge of

5 | falsity, (3) intent to defraud, i.e., to induce reliance; (4)

6 | justifiable reliance on the misrepresentation; and (5) resulting

7 | damage. Engalia v. Permanente Med. Grp., Inc., 15 Cal. 4th 951,

8 | 974 (1997); Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th

9 | Cir. 2009). To state a claim for negligent misrepresentation, a

10 | plaintiff must allege: (1) a misrepresentation of a past or

11 | existing material fact; (2) without reasonable ground for

12 | believing it to be true; (3) intent to induce reliance; (4)

13 | justifiable reliance; and (5) resulting damage. Apollo Capital

14 | Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226,

15 | 243 (2d Dist. 2007); Glenn K. Jackson, Inc. v. Roe, 273 F.3d

16 | 1192, 1200 (9th Cir. 2000).

17 |         Plaintiff alleges that at various points in 2012 and

18 | 2013, IndyMac falsely represented that plaintiff's loan

19 | application was incomplete, (FAC ¶ 64), that plaintiff was

20 | ineligible for a successive HAMP modification, (id. ¶ 70), and

21 | that there was no foreclosure sale scheduled. (Id. ¶ 76.)

22 | Plaintiff then alleges that, as a result of these three

23 | misrepresentations, he "continued [his] attempts to obtain a loan

24 | modification" from IndyMac rather than "exploring other options"

25 | that would have enabled him to continue making monthly mortgage

26 | payments and postpone the trustee's sale. (Id. ¶¶ 68, 74, 80.)

27 |         Even if plaintiff could satisfy the first three

28 | elements of each claim, he has not shown that he acted in

1   reliance on any of IndyMac's alleged misrepresentations.  In the
2   mortgage context, a plaintiff's allegations that he declined to
3   "explore other options" as a result of a lender's false
4   representations are generally not sufficient to withstand a
5   motion to dismiss because they simply "re-state the element of
6   the claim."  Valtierra v. Wells Fargo Bank, N.A., No. CIV-F-10-
7   0849 AWI GSA, 2011 WL 2078024, at *3 (E.D. Cal. May 25, 2011)
8   (holding that an allegation that "Plaintiff could have explored
9   other options had the [Defendant] not acted in such a deceptive
10  manner" was not sufficient to demonstrate reliance).

11         Plaintiff does not identify what "other options" he
12  declined to pursue, or how they would have enabled him to make
13  his mortgage payments or postpone the foreclosure sale.  For
14  instance, one panel of the California Court of Appeal held that a
15  plaintiff could survive demurrer based on allegations that "she
16  would have pursued other options, including possibly selling her
17  home, retaining counsel earlier, and/or finding a cosigner to
18  save her home" but for the defendant's statement that she would
19  receive a permanent loan modification.  West v. JPMorgan Chase
20  Bank, N.A., 214 Cal. App. 4th 780, 805 (4th Dist. 2013).  By
21  contrast, this court has held that bare allegations that the
22  plaintiff would have explored other options or pursued legal
23  action to stop a foreclosure sale were insufficient to survive a
24  motion to dismiss.  See, e.g., Sholiay v. Fed. Nat'l Mortg.
25  Assoc., No. CIV 2:13-00958, 2013 WL 5569988, at *7 n. 6 (E.D.
26  Cal. Oct. 9, 2013) (holding that plaintiff's allegation that he
27  would have been able to enjoin a trustee's sale if he was not
28  falsely promised a loan modification was implausible because his

8

1    "underlying claim lacks merit").

2            "Even assuming justifiable reliance . . . no liability

3    attaches if the damages sustained were otherwise inevitable or

4    due to unrelated causes."  Gardner v. RSM & A Foreclosure Servs.,

5    LLC, No. CIV. 2:12-2666 JAM AC, 2013 WL 3242211, at *4 (E.D. Cal.

6    June 25, 2013) (quoting Kruse v. Bank of Am., 202 Cal. App. 3d

7    38, 60-61 (1st Dist. 1988) (internal quotation marks omitted)).

8    Here, plaintiff's allegations do not show that any damages he

9    suffered were the result of IndyMac's conduct, rather than his

10   own failure to make his mortgage payments.  Trustee Corps

11   recorded multiple notices of default against plaintiff's home

12   prior to any of the alleged misrepresentations, and each of these

13   notices states an arrearage of over $10,000.  (See IndyMac RJN

14   Exs. B-D.)  See Manzano v. Metlife Bank, N.A., No. CIV 2:11-651

15   WBS DAD, 2011 WL 2080249, at *5 (E.D. Cal. May 25, 2011)

16   (dismissing fraud and negligent misrepresentation claims when

17   "plaintiff stopped making payments under the loan before these

18   alleged misrepresentations were made"); DeLeon v. Wells Fargo

19   Bank, N.A., 10-CV-10390-LHK, 2011 WL 311376, at *7 (N.D. Cal.

20   Jan. 28, 2011) ("Without some factual basis suggesting that

21   Plaintiffs could have cured the default . . . the Court cannot

22   reasonably infer that Wells Fargo's alleged misrepresentations

23   resulted in the loss of plaintiff's home.  The facts alleged

24   suggest that Plaintiffs lost their home because they became

25   unable to keep up with monthly payments and lacked the financial

26   resources to cure the default.").

27           In short, plaintiff has not sufficiently alleged that

28   he relied on any of IndyMac's representations; even if he had, he

1  has not alleged any facts showing that the damages he suffered

2  were a result of IndyMac's alleged misrepresentations, as opposed

3  to his own inability to pay back his loan.  See Gardner, 2013 WL

4  3242211, at *4.  Accordingly, the court must grant IndyMac's

5  motion to dismiss plaintiff's intentional and negligent

6  misrepresentation claims.

7       B.    Promissory Estoppel

8            "The elements of a promissory estoppel claim are: (1) a

9  promise that is clear and unambiguous in its terms; (2) reliance

10 on the promise by the party to whom the promise is made; (3) that

11 is reasonable and foreseeable; and (4) injury to the party

12 asserting estoppel due to his or her reliance." Alimena v.

13 Vericrest Fin., Inc., --- F. Supp. 2d ----, No. CIV 2:12-901 LKK

14 JFM, 2013 WL 4049663, at *12 (E.D. Cal. Aug. 29, 2013) (citing

15 Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890-91

16 (2d Dist 1976)).

17           Plaintiff alleges that IndyMac "promised [p]laintiff a

18 HAMP loan modification in or about 2010 and further promised not

19 to foreclose on [p]laintiff while he was being reviewed for a

20 loan modification."  (FAC ¶ 95.)  As explained above, even if

21 IndyMac had made these promises, plaintiff has not sufficiently

22 alleged that he suffered any injury in reliance on these

23 promises.  Accordingly, the court must grant IndyMac's motion to

24 dismiss plaintiff's promissory estoppel claim.

25      C.    Breach of Contract

26           "[T]he elements of a cause of action for breach of

27 contract are (1) the existence of the contract, (2) plaintiff's

28 performance or excuse for nonperformance, (3) defendant's breach,

1 and (4) the resulting damages to the plaintiff."  Oasis W.

2 Realty, Inc. v. Goldman, 51 Cal. 4th 811, 821 (2011).

3       Plaintiff alleges that IndyMac promised to extend him a

4 permanent loan modification and that it breached this promise by

5 providing him with a "backup modification" with terms that were

6 inconsistent with HAMP guidelines.  (FAC ¶ 90.)  The court need

7 not decide whether this alleged promise constituted an

8 enforceable contract because, even if it did, plaintiff admits

9 that he did not make all of the payments that were required under

10 the loan modification agreement.  (Id. ¶ 91.)  Because plaintiff

11 has not performed his obligation under any alleged contract, he

12 cannot bring a breach of contract claim unless his failure to

13 perform is excused.

14       Plaintiff alleges that his failure to make payments was

15 excused because he could no longer afford to make the payments,

16 which were "based on inaccurate income and outside of HAMP

17 guidelines."  (Id.)  However, it is black-letter law that "mere

18 unforeseen difficulty or expense . . . ordinarily will not excuse

19 performance."  1 Witkin, Summary of California Law (Contracts) §

20 830 (10th ed. 2005); Metzler v. Thye, 163 Cal. 95, 98 (1912).

21 In order to show that his performance was excused, plaintiff must

22 show that it was "objectively impossible" for any person to make

23 the required payments.  Rosales v. Downey Sav. & Loan Ass'n, No.

24 09cv39 WQH (AJB), 2009 WL 514229, at *8 (S.D. Cal. Mar. 2, 2009)

25 (citing Hensler v. City of Los Angeles, 124 Cal. App. 2d 71, 83

26 (2d Dist. 1954)).

27       The fact that the required mortgage payments were

28 onerous is not enough to excuse plaintiff's failure to pay them.

1   See, e.g., Archiunda v. Chase Home Fin. LLC, No. 09-CV-00960-H

2   (AJB), 2009 WL 1796295, at *5 (S.D. Cal. June 23, 2009) (holding

3   that plaintiff's performance was not excused even though he

4   alleged that "based upon the actual income information provided .

5   . . Plaintiff could never perform according to the terms of the

6   loan").  Because it is not "impossible for anyone to perform,"

7   id., plaintiff's failure to make payments does not excuse his

8   nonperformance, and plaintiff cannot state a breach of contract

9   claim.  Accordingly, the court must grant IndyMac's motion to

10  dismiss plaintiff's breach of contract claim.

11       D.   Negligence

12       "To prove a cause of action for negligence, plaintiff

13  must show (1) a legal duty to use reasonable care, (2) breach of

14  that duty, and (3) proximate [or legal] cause between the breach

15  and (4) the [plaintiff's] injury." Castaneda, 687 F. Supp. 2d at

16  1197 (citing Mendoza v. City of Los Angeles, 66 Cal. App. 4th

17  1333, 1339 (2d Dist. 1998)) (internal quotation marks omitted).

18  "The existence of a legal duty to use reasonable care in a

19  particular factual situation is a question of law for the court

20  to decide."  Vasquez v. Residential Invs., Inc., 118 Cal. App.

21  4th 269, 278 (4th Dist. 2004).

22       "[A]s a general rule, a financial institution owes no

23  duty of care to a borrower when the institution's involvement in

24  the loan transaction does not exceed the scope of its

25  conventional role as a lender of money."  Nymark v. Heart Fed.

26  Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991).

27  Plaintiff argues, however, that IndyMac owed him a duty of care

28  because it "actively engaged him in the modification process" and

1    exceeded the scope of its traditional role as a lender.  (Pl.'s
2    Opp'n at 20:13-14.)   Some courts in California have held that a
3    loan servicer who offers a loan modification goes "beyond its
4    role as a silent lender and loan servicer" and that its
5    activities "constitute sufficient active participation to create
6    a duty of care."  Ansanelli v. JP Morgan Chase Bank, N.A., No. C-
7    10-03892 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011);
8    see also, e.g., Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th
9    872, 905 (1st Dist. 2013); Becker v. Wells Fargo Bank, N.A., No.
10   CIV. 2:10-02799 LKK KJN, 2012 WL 6005759, at *11-*12 (E.D. Cal.
11   Nov. 30, 2012) (Newman, M.J.); Garcia v. Ocwen Loan Servicing,
12   LLC, No. C-10-0290 PVT, 2010 WL 1881098, at *2-*3 (N.D. Cal. May
13   10, 2010).

14        Despite plaintiff's reliance on this "long line" of
15   authorities, (Pl.'s Opp'n at 20:27), Ansanelli and its progeny
16   represent a minority position.  Armstrong v. Chevy Chase Bank,
17   FSB, No. 5:11-cv-05664 EJD, 2012 WL 4747165, at *4 (N.D. Cal.
18   Oct. 3, 2012); see also Settle v. World Sav. Bank, F.S.B., No. ED
19   CV 11-00800 MMM (DTBx), 2012 WL 1026103, at *8 (C.D. Cal. Jan.
20   11, 2012) (noting that "numerous cases have characterized a loan
21   modification as a traditional money lending activity" and listing
22   cases).  In Armstrong, the court explained that "a loan
23   modification, which at its core is an attempt by a money lender
24   to salvage a troubled loan, is nothing more than a renegotiation
25   of loan terms."  Armstrong, 2012 WL 4747165, at *4.  "Outside of
26   actually lending money, it is undebatable that negotiating the
27   terms of the lending relationship is one of the key functions of
28   a money lender."  Id.  For this reason, the court has stated

1  before that it, "like the court in Armstrong, finds Ansanelli

2  unpersuasive."  Bunce v. Ocwen Loan Servicing, LLC, No. CIV.

3  2:13-00976 WBS EFB, 2013 WL 3773950, at *6 (E.D. Cal. July 17,

4  2013).

5        Because the majority of California courts hold that

6  loan modification activities are part and parcel of a loan

7  servicer's "conventional role as a lender of money," Nymark, 231

8  Cal. App. 3d at 1096, and because plaintiff has not alleged any

9  facts that show a special relationship with IndyMac, plaintiff

10 cannot allege that IndyMac owed him a duty of care.  Accordingly,

11 the court must grant IndyMac's motion to dismiss plaintiff's

12 negligence claim.

13       E.   Equitable Accounting

14       "Under California law, an accounting is generally a

15 remedy under equity," rather than a freestanding cause of action.

16 Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177,

17 1191 (N.D. Cal. 2009) (citing Batt v. City & County of San

18 Francisco, 155 Cal. App. 4th 65, 82 (1st Dist. 2007)).  To the

19 extent that California law does permit a separate cause of action

20 for accounting, a plaintiff must show that there is "some balance

21 due the plaintiff that can only be ascertained by an accounting."

22 Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (3d Dist.

23 2009).  Plaintiff does not seek an accounting of the money that

24 defendants owe him; rather, he seeks an accounting of the "true

25 amount of his indebtedness" to defendants.  (Pl.'s Opp'n at

26 23:15.)  Accordingly, plaintiff cannot bring a claim for

27 accounting, and the court must grant defendants' motion to

28 dismiss this claim.

14

1    F.    HOLA Preemption

2          The Home Owners Loan Act of 1933 ("HOLA") authorizes

3    the Office of Thrift Supervision ("OTS") to promulgate

4    regulations governing federal savings associations.  12 U.S.C. §

5    1464; Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th

6    Cir. 2008).  Pursuant to that authority, OTS has issued a

7    regulation that authorizes federal savings associations to

8    "extend credit as authorized under federal law . . . without

9    regard to state laws purporting to regulate or otherwise affect

10   their credit activities."  12 C.F.R. § 560.2(a).  By its own

11   terms, this regulation "occupies the entire field of lending

12   regulation for federal savings associations," id., and therefore

13   "le[aves] no room for the States to supplement it."  Rice v.

14   Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).

15         The regulation lists thirteen "illustrative examples"

16   of state laws that are preempted.  12 C.F.R. § 560.2(b).  In

17   particular, the regulation preempts any state law that purports

18   to regulate the "processing, origination, servicing, sale or

19   purchase of, or investment or participation in, mortgages."  12

20   C.F.R. § 560.2(b)(10).  The list in paragraph (b) is not limited

21   to statutes that specifically regulate lending activities, but

22   also encompasses statutes of general applicability, such as the

23   UCL.  See, e.g., Munoz v. Fin. Freedom Senior Funding Corp., 567

24   F. Supp. 2d 1156, 1163 (C.D. Cal. 2008) (holding that UCL claims

25   were preempted by HOLA).  The regulation also includes a savings

26   clause stating that several types of state law, including

27   contract and commercial law, real property law, and tort law,

28   "are not preempted to the extent that they only incidentally

15

1  affect the lending operations of Federal savings associations or

2  are otherwise consistent with the purposes of paragraph (a) of

3  this section."  12 C.F.R. § 560.2(c).

4          OTS has also promulgated a framework for courts to

5  determine "the status of state laws under § 560.2":

6      [T]he first step will be to determine whether the type
       of law in question is listed in paragraph (b).  If so,
7      the analysis will end there; the law is preempted.  If
       the law is not covered by paragraph (b), the next
8      question is whether the law affects lending.  If it
       does, then, in accordance with paragraph (a), the
9      presumption arises that the law is preempted.  This
       presumption can be reversed only if the law can be
10     shown to fit within the confines of paragraph (c).

11  OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).[5]

12  The Final Rule emphasizes that "paragraph (c)," the savings

13  clause in the regulation, "is intended to be interpreted

14  narrowly," and that "[a]ny doubt should be resolved in favor of

15  preemption."  Id.; see also Bank of Am. v. City & County of San

16  Francisco, 309 F.3d 551, 558 (9th Cir. 2002) ("[B]ecause there

17  has been a history of significant federal presence in national

18  banking, the presumption against preemption of state law is

19  inapplicable.").  In applying this framework, the relevant issue

20  is whether the state law, "as applied, is a type of state law

21  contemplated in the list under paragraph (b)."  Silvas, 514 F.3d

22  at 1006 (emphasis added).

23

_____

24      [5]    To the extent that the Final Rule evinces OTS's
       interpretation of the preemptive scope of § 560.2, it "must be
25     given controlling weight."  Silvas, 514 F.3d at 1005 n.5 (citing
       Auer v. Robbins, 519 U.S. 452 (1997)); see also Bassiri v. Xerox
26     Corp., 463 F.3d 927, 930 (9th Cir. 2006) (explaining that an
       agency's interpretation of its own regulation is "controlling"
27     under Auer).

28

16

1    IndyMac is a division of OneWest Bank, FSB, which is a

2    federally chartered savings bank.  The Deed of Trust noted that

3    the "Lender" was "IndyMac Bank, F.S.B., a federally chartered

4    savings bank."  (IndyMac RJN Ex. A.)  IndyMac is therefore a

5    federal savings association subject to OTS regulations, <u>see</u> 12

6    U.S.C. § 1462 (defining a "federal savings association"), and the

7    court must determine whether plaintiff's five statutory claims

8    are preempted.[6]

9            1.  <u>California Civil Code Section 2923</u>

10    Plaintiff brings claims under sections 2923.6(c),

11    2923.6(d), and 2923.7 of the California Civil Code, which

12    regulate loan modification activities.  Plaintiff alleges that

13    IndyMac's conduct in the loan modification process violated

14    California Civil Code section 2923 because IndyMac "dual tracked"

15    his application, (FAC ¶ 120), did not permit him to appeal the

16    denial of his application, (<u>id.</u> ¶ 117), and failed to assign him

17    a single point of contact with regard to his application (<u>id.</u> ¶

18    121).  Plaintiff alleges that these violations resulted in the

19    unlawful sale of his home at a foreclosure sale.  (<u>Id.</u> ¶¶ 118,

20    120, 122.)

21    As applied to plaintiff's claims, section 2923 is

22    preempted because it imposes requirements on the "processing,

23    origination, [and] servicing" of plaintiff's mortgage loan and

24    application for a loan modification in addition to those imposed

25    by federal law.  12 C.F.R. § 560.2(b)(10); <u>see, e.g.</u>, <u>Biggins v.</u>

26

27        [6]    Because the court grants IndyMac's motion to dismiss
      plaintiff's non-statutory claims on alternative grounds, it need
28    not determine whether those claims are also preempted by HOLA.

17

1   Wells Fargo & Co., 266 F.R.D. 399, 417 (N.D. Cal. 2009) (holding
2   that a section 2923.6 claim premised on failure to extend a loan
3   modification was preempted by HOLA); Marquez v. Wells Fargo Bank,
4   N.A., No. C 13-2819 PJH, 2013 WL 5141689, at *5 (N.D. Cal. Sept.
5   13, 2013) (holding that a section 2923.7 claim based on
6   allegations that the plaintiffs were denied a single point of
7   contact and were never "given a meaningful opportunity to apply
8   for, and receive, a loan modification . . . is preempted by
9   HOLA").

10          Even if section 2923 were not covered by §
11   560.2(b)(10), it would still be preempted to the extent that it
12   affected IndyMac's lending activities by imposing liability on
13   IndyMac for its conduct in the loan modification process.  See
14   Final Rule, 61 Fed. Reg. at 50966-67.  To the extent that
15   plaintiff alleges that IndyMac's "fail[ure] to communicate" with
16   him during the loan modification process can give rise to
17   liability, section 2923 is preempted because it would impose
18   duties on IndyMac that it would "not be subject to . . . in other
19   states." Parcray v. Shea Mortg., Inc., No. CIV. 2:09-1942 OWW
20   GSA, 2010 WL 1659369, at *8 (E.D. Cal. Apr. 23, 2010) (citing
21   Odinma v. Aurora Loan Svcs., No. C-09-4674 EDL, 2010 WL 1199886,
22   at *8 (N.D. Cal. Mar. 23, 2010)).  Accordingly, the court must
23   grant IndyMac's motion to dismiss plaintiff's section 2923
24   claims.

25          2.   California Civil Code Section 2924

26          Plaintiff also brings a claim under section 2924 of the
27   California Civil Code, which regulates foreclosure proceedings.
28   Plaintiff alleges that the assignment of his mortgage loan to a

1 securitized trust was unlawful, that the Notice of Default was

2 therefore void, and that, as a result, the foreclosure sale

3 violated Civil Code section 2924.

4          Like plaintiff's section 2923 claims, section 2924

5 "[c]laims based on misconduct related to the foreclosure

6 proceedings" are preempted by HOLA. Ismail v. Wells Fargo Bank,

7 N.A., No. CIV. 2:12-1653 MCE CKD, 2013 WL 930611, at *9 (E.D.

8 Cal. Mar. 8, 2013) (citations omitted); see also, e.g., DeLeon v.

9 Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal.

10 2010) (holding that claims under sections 2923.5 and 2924 are

11 preempted by HOLA); Ngoc Nguyen v. Wells Fargo Bank, N.A., 749 F.

12 Supp. 2d 1022, 1032 (N.D. Cal. 2010) (same). Plaintiff's claim,

13 which is premised on the alleged assignment of his loan to a

14 securitized trust, is squarely preempted because it seeks to

15 apply section 2924 to regulate IndyMac's "sale or purchase" of

16 mortgages. 12 C.F.R. § 560.2(b)(10); Sami v. Wells Fargo Bank,

17 No. C. 12-00108 DMR, 2012 WL 967051, at *6-7 (holding that a

18 section 2924 claim premised on allegations of unlawful assignment

19 was preempted by HOLA). Because plaintiff's section 2924 claim

20 is premised on the allegation that IndyMac lacked authority to

21 initiate the foreclosure sale, it is preempted for the same

22 reason. Id. at *8 ("Initiation of the foreclosure process is the

23 type of lending activity expressly contemplated by § 560.2(b)(10)

24 because it constitutes the 'processing' and 'servicing' of a

25 mortgage."). Accordingly, the court must grant defendants'

26 motion to dismiss plaintiff's section 2924 claim.

27          3.   The UCL

28          California's UCL prohibits "any unlawful, unfair, or

19

1    fraudulent business act or practice . . . .”  Cal Bus. & Profs.

2    Code § 17200.  The UCL “establishes three varieties of unfair

3    competition . . . .  In other words, a practice is prohibited as

4    unfair or deceptive even if not unlawful and vice versa.”  Cel-

5    Tech Comm’ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163,

6    180 (1999) (internal quotation marks and citations omitted).

7         Plaintiff brings a claim under the UCL for “unlawful

8    business practices,”[7] in which he alleges that IndyMac “violated

9    Cal. Civ. Code §§ 2923.6, 2923.7, and 2924.”[8]  (FAC ¶ 108.)

10   Because “those statutes would impose additional requirements on

11   [IndyMac] in the mortgage process, the UCL claim is . . .

12   preempted to the extent that it depends on those statutes.”

13   _____

14        [7]   Although plaintiff labels his UCL claim “unlawful
     business practices,” some allegations suggest that he also seeks

15   to assert a claim under the UCL’s “unfair” prong.  (See, e.g.,
     FAC ¶ 107 (“[T]he unlawful acts and practices of Defendants

16   alleged herein constitute unlawful or unfair business practices .
     . . .”).)  The court need not determine whether plaintiff has

17   stated a claim under the UCL’s “unfair” prong because any such
     claim would also be preempted.  See, e.g., Vega, 654 F. Supp. 2d

18   at 1118 (noting that a UCL claim brought under the “unfair” prong
     was preempted by HOLA to the extent that it relied on allegations

19   of inadequate loan disclosures).

20

21        [8]   Plaintiff’s UCL claim also reiterates his allegations
     that IndyMac committed “material misrepresentations affecting

22   plaintiff’s interest in [his home] and committed numerous acts of
     negligence in the handling of and processing of [p]laintiff’s

23   loan modification applications.”  (FAC ¶ 108.)  These allegations
     cannot give rise to an “unlawful business practices” claim, which

24   must be premised on the violation of a statute or constitutional
     provision.  Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1168

25   (9th Cir. 2012) (citing People ex rel. Lockyer v. Fremont Life
     Ins. Co., 104 Cal. App. 4th 508, 515 (2d Dist. 2002)).  Because

26   plaintiff’s section 2923 and 2924 claims are preempted by HOLA,
     plaintiff has no constitutional or statutory predicate for his

27   UCL claim.  See id.

28
                                 20

1  <u>Plastino v. Wells Fargo Bank</u>, 873 F. Supp. 2d 1179, 1186 n.4

2  (N.D. Cal. 2012); <u>see also</u> <u>Vega v. JPMorgan Chase Bank, N.A.</u>, 654

3  F. Supp. 2d 1104, 1118 (E.D. Cal. 2009) (O'Neill, J.) (holding

4  that plaintiffs in a foreclosure-related action "are unable to

5  avoid [HOLA] preemption in the guise of a UCL claim").

6  Accordingly, the court must grant defendants' motion to dismiss

7  plaintiff's UCL claim.[9]

8       G.   <u>Wrongful Foreclosure</u>

9       "Wrongful foreclosure is an action in equity, where a

10 plaintiff seeks to set aside a foreclosure sale." <u>Castaneda</u>, 687

11 F. Supp. 2d at 1201. "A nonjudicial foreclosure sale is

12 accompanied by a presumption that it was conducted regularly and

13 fairly." <u>Melendrez v. D & I Inv., Inc.</u>, 127 Cal. App. 4th 1238,

14 1258 (6th Dist. 2005) (internal quotation marks omitted). "This

15 presumption may only be rebutted by substantial evidence of

16 prejudicial procedural irregularity." <u>Id.</u>; <u>see also</u> <u>Quinteros v.</u>

17 <u>Aurora Loan Servs.</u>, 740 F. Supp. 2d 1163, 1169 (E.D. Cal. 2010)

18 (Ishii, J.) ("[S]ome form of actual prejudice is necessary.").

19 On a motion to dismiss, therefore, a plaintiff must allege "facts

20 showing that [he was] prejudiced by the alleged procedural

21 defects." <u>Hadley v. BNC Mortg., Inc.</u>, 466 Fed. App'x 612, 613

22 (9th Cir. 2012) (citing <u>Arnolds Mgmt. Corp. v. Eischen</u>, 158 Cal.

23

24       [9]    Because all of plaintiff's statutory claims are
   preempted by HOLA, the court need not reach IndyMac's argument
25 that these statutes violate the Contracts Clause of the
   Constitution. <u>See</u> <u>Douglas v. Seacoast Prods., Inc.</u>, 431 U.S. 265
26 (1977) (holding that addressing preemption questions before
   constitutional questions is consistent with the "practice of
27 deciding statutory claims first to avoid unnecessary
   constitutional adjudications").
28

1   App. 3d 575 (2d Dist. 1984)).

2           Plaintiff alleges that he "suffered harm and prejudice

3   as the sale occurred and he has now lost title to the Subject

4   Property." (FAC ¶ 132.) The fact that plaintiff lost title to

5   his home in a foreclosure sale does not constitute prejudice; if

6   it did, the prejudice inquiry would be meaningless because every

7   plaintiff in a wrongful foreclosure action has lost title to his

8   or her home in a foreclosure sale. Rather, plaintiff must

9   demonstrate that the "violation of the statute[s] [themselves],

10  and not the foreclosure proceedings, caused [his] injury."

11  Aguiar v. Wells Fargo Bank, N.A., No. 12-CV-03653 YGR, 2012 WL

12  5915124, at *5 (N.D. Cal. Nov. 26, 2012).

13          Plaintiff cannot do so for two reasons. First, because

14  plaintiff's statutory claims cannot withstand dismissal, he

15  cannot bring a wrongful foreclosure claim predicated on

16  violations of those statutes. See, e.g., Falcocchia v. Saxon

17  Mortg., Inc., 709 F. Supp. 2d 873, 887 (E.D. Cal. 2010) (Karlton,

18  J.) (holding that because plaintiff's statutory claims under the

19  Real Estate Settlement Procedures Act (RESPA) failed, plaintiff

20  could not bring a wrongful foreclosure claim predicated on RESPA

21  violations). Plaintiff cannot do an end-run around HOLA

22  preemption by recasting his statutory claims as a wrongful

23  foreclosure claim. See DeLeon, 729 F. Supp. 2d at 1126 (holding

24  that plaintiff's wrongful foreclosure claim was preempted because

25  it relied upon violations of statutory claims that were

26  preempted).

27          Second, even if plaintiff could bring this wrongful

28  foreclosure claim, plaintiff has not sufficiently alleged that he

22

1    was prejudiced by any alleged violation of these statutes.  At

2    various points throughout the FAC, plaintiff alleges that he was

3    not assigned a single point of contact about his loan

4    modification application, (FAC ¶ 121), was "dual tracked," (id. ¶

5    120), and was denied an opportunity to appeal the decision not to

6    offer him a loan modification, (id. ¶ 117).  Plaintiff does not

7    allege any facts showing that these alleged irregularities

8    resulted in the denial of his application for a loan modification

9    or that he could have successfully appealed the denial of his

10   application for a loan modification.  Plaintiff has therefore not

11   alleged that these "violations of the statute[s] [themselves],

12   and not the foreclosure proceedings, caused [his] injury."

13   Aguiar, 2012 WL 5915124, at *5.  Accordingly, the court must

14   grant IndyMac's motion to dismiss this claim.

15         H.   Claims Against Freddie Mac

16              Plaintiff also asserts that Freddie Mac is liable for

17   IndyMac's conduct because IndyMac acted as the agent of Freddie

18   Mac, the owner of plaintiff's loan.  (FAC ¶¶ 51-58.)  The court

19   need not determine whether plaintiff has alleged sufficient

20   "facts that would suggest a plausible agency relationship"

21   between IndyMac and Freddie Mac, Castaneda v. Saxon Mortg.

22   Servs., Inc., No. CIV. 2:09-1124 WBS DAD, 2010 WL 726903, at *6

23   (E.D. Cal. Feb. 26, 2010), because plaintiff has not stated a

24   claim for relief against IndyMac and does not allege any separate

25   wrongdoing by Freddie Mac.  Accordingly, the court must grant

26   defendants' motion to dismiss all claims against Freddie Mac.[10]

27   _____

28        [10]   Because the court grants defendants' motion to dismiss
     in its entirety, it need not reach defendants' argument that

1    IT IS THEREFORE ORDERED that defendants' motion to

2 dismiss be, and the same hereby is, GRANTED.  Plaintiff has

3 twenty days to file an amended complaint, if he can do so

4 consistent with this Order.

5 Dated:  November 15, 2013

6

7 WILLIAM B. SHUBB
  UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 plaintiff is estopped from bringing any claims that he did not
  include in his bankruptcy petition.

28