1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11                          ----oo0oo----

12  JASON DESCHAINE,                 NO. CIV. 2:13-1991 WBS CKD

13           Plaintiff,             MEMORANDUM AND ORDER RE: MOTION
        v.                          TO DISMISS SECOND AMENDED
14                                  COMPLAINT
    INDYMAC MORTGAGE SERVICES, A
15  DIVISION OF ONEWEST BANK,
    FSB; FEDERAL HOME LOAN
16  MORTGAGE CORPORATION; and
    DOES 1 through 50, inclusive,
17
             Defendants.
18

19

20                          ----oo0oo----

21          Plaintiff Jason Deschaine brought this action against

22  defendants IndyMac Mortgage Services, a division of OneWest Bank,

23  FSB ("IndyMac") and the Federal Home Loan Mortgage Corporation

24  ("Freddie Mac") arising out of the foreclosure of his home.

25  Defendants now move to dismiss plaintiff's Second Amended

26  Complaint for failure to state a claim upon which relief can be

27  granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

28

                                  1

1 I.   Factual & Procedural History

2           In 2005, plaintiff entered into a mortgage loan for

3 $310,000, which was secured by a Deed of Trust to his home in

4 Rough and Ready, California.  (Defs.' Req. for Judicial Notice

5 ("RJN") Ex. A (Docket No. 36).)  On January 26, 2009, Trustee

6 Corps, a foreclosure trustee, recorded a Notice of Default

7 ("NOD") against plaintiff's home stating that plaintiff was

8 $17,901.804 in arrears on his mortgage payments.  (Id. Ex. B.)

9 Later that year, plaintiff contacted IndyMac, the servicer of

10 plaintiff's mortgage loan, and sought a loan modification.

11 (Second Amended Complaint ("SAC") ¶ 15 (Docket No. 34).)

12 Plaintiff applied for a HAMP loan modification in September 2009

13 and entered into a trial loan modification plan ("TPP") in

14 February 2010.  (Id. ¶¶ 16-18.)

15           Plaintiff began making payments under the TPP until

16 IndyMac notified him in July 2010 that he was ineligible for a

17 permanent HAMP[1] loan modification because his mortgage payments

18 were less than thirty-one percent of his monthly income.  (Id. ¶¶

19 19-20.)  IndyMac invited plaintiff to apply for a Freddie Mac

20 Backup Modification, under which plaintiff could continue to make

21 payments on the mortgage.  (Id. ¶ 20 & Ex. B.)  Plaintiff

22 attempted to make payments under the backup modification for

23 approximately a year and a half, but fell behind on his payments

24 again.  (Id. ¶ 23.)  On June 15, 2012, Trustee Corps recorded

25 _____

26           [1]   The Home Affordable Modification Program ("HAMP") is a
program initiated by the Treasury Department in 2009 designed "to
27 incentivize banks to refinance mortgages of distressed homeowners
so they could stay in their homes."  Corvello v. Wells Fargo
28 Bank, N.A., 728 F.3d 878, 880 (9th Cir. 2013).

1    another NOD, which reflected an arrearage of $11,990.13.  (RJN

2    Ex. D.)

3           Between April 2012 and June 2013, plaintiff attempted

4    to obtain an additional loan modification from IndyMac.  (SAC ¶

5    24.)  On several occasions, IndyMac responded either that

6    plaintiff's application was incomplete or that he was ineligible

7    for a loan modification.  (Id. ¶¶ 25-30.)  IndyMac then scheduled

8    a foreclosure sale on February 26, 2013.  (See id. ¶ 31.)  On

9    February 25, 2013, a day before the foreclosure sale, plaintiff

10   filed for bankruptcy.  (Id.)  Plaintiff obtained a discharge in

11   bankruptcy on June 3, 2013.  (RJN Ex. F.)

12          At some point between February 26, 2013, and March 20,

13   2013, IndyMac allegedly informed plaintiff that he could re-apply

14   for a loan modification.  (SAC ¶ 32.)  Plaintiff submitted that

15   application to IndyMac on March 20, 2013, as well as an updated

16   application on April 4, 2013.  (Id. ¶¶ 32, 33.)  Between April

17   and June 2013, plaintiff alleges that he "remained in constant

18   contact" with IndyMac and continued to send updated financial

19   documents when IndyMac requested him to do so.  (Id. ¶ 34.)

20          On June 11, 2013, an IndyMac employee named "Alex W19"

21   allegedly informed plaintiff that there was no foreclosure sale

22   scheduled, but that IndyMac required additional documentation in

23   order to process his application.  (Id. ¶ 35.)  Plaintiff then

24   alleges that on June 24, 2013, an IndyMac employee named "Albert

25   938" informed plaintiff that his home would be sold at a

26   foreclosure sale the next day.  (Id. ¶¶ 36-37.)  On June 25,

27   2013, Freddie Mac purchased plaintiff's home at a trustee's sale.

28   (Id. ¶ 38.)

                                    3

1        Plaintiff filed this action in Nevada County Superior
2  Court on August 8, 2013.[2]  (Docket No. 1.)  Defendants removed
3  the action to this court pursuant to 12 U.S.C. § 1452(f), which
4  entitles Freddie Mac to remove to federal court any action to
5  which it is a party.  (Id.)  On October 21, 2013, plaintiff filed
6  a First Amended Complaint, which alleged twelve claims: (1)
7  intentional misrepresentation; (2) negligent misrepresentation;
8  (3) breach of contract; (4) promissory estoppel; (5) negligence;
9  (6) violation of the Unfair Competition Law ("UCL"), Cal. Bus. &
10  Profs. Code § 17200 et seq.; (7) equitable accounting; (8) "dual
11  tracking" of plaintiff's loan modification application in
12  violation of California Civil Code section 2923.6(c); (9) failure
13  to issue plaintiff an opportunity to appeal the denial of a loan
14  modification in violation of California Civil Code section
15  2923.6(d); (10) failure to appoint a single point of contact in
16  violation of California Civil Code section 2923.7; (11) violation
17  of California Civil Code section 2924; and (12) wrongful
18  foreclosure.[3]  (Docket No. 22.)

19        On November 15, 2013, the court granted defendants'
20  motion to dismiss plaintiff's First Amended Complaint, and
21  granted plaintiff leave to file an amended complaint within

22        [2]   In addition to Freddie Mac and IndyMac, plaintiff named
23  Trustee Corps as a defendant in this action.  Plaintiff
subsequently stipulated to dismiss Trustee Corps from this action
24  with prejudice.  (Docket No. 46.)
        [3]   Plaintiff refers to this claim as an "equitable action
25  to set aside sale," which is equivalent to a wrongful foreclosure
claim.  See, e.g., Castaneda v. Saxon Mortg. Servs, Inc., 687 F.
26  Supp. 2d 1191, 1201 (E.D. Cal. 2009) (Shubb, J.) ("Wrongful
27  foreclosure is an action in equity, where a plaintiff seeks to
set aside a foreclosure sale.").  In the interest of brevity, the
28  court will refer to this claim as "wrongful foreclosure."

1    twenty days "if he can do so consistent with this Order."

2    (Docket No. 33.)  Plaintiff timely filed the SAC, which did not

3    assert a claim for equitable accounting but did re-assert each of

4    the eleven other claims that plaintiff had brought in the First

5    Amended Complaint.  Defendants now move to dismiss the SAC

6    pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure

7    to state a claim upon which relief can be granted.  (Docket No.

8    35.)

9    II.  Request for Judicial Notice

10          In general, a court may not consider items outside the

11   pleadings when deciding a motion to dismiss, but it may consider

12   items of which it can take judicial notice.  Barron v. Reich, 13

13   F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

14   notice of facts "not subject to reasonable dispute" because they

15   are either "(1) generally known within the territorial

16   jurisdiction of the trial court or (2) capable of accurate and

17   ready determination by resort to sources whose accuracy cannot

18   reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice

19   may properly be taken of matters of public record outside the

20   pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504

21   (9th Cir. 1986).

22          Defendants request that the court judicially notice

23   several recorded documents pertaining to plaintiff's property,

24   including the Deed of Trust, (RJN Ex. A), and three Notices of

25   Default, (id. Exs. B-D).  The court will take judicial notice of

26   these documents, since they are matters of public record whose

27   accuracy cannot be questioned.  See Lee v. City of Los Angeles,

28   250 F.3d 668, 689 (9th Cir. 2001).  The court will also take

                                    5

1  judicial notice of plaintiff's bankruptcy court filings, (see RJN
2  Exs. E-F), as they are likewise matters of public record whose
3  accuracy cannot be questioned.  See Rosal v. First Fed. Bank of
4  Cal., 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking
5  judicial notice of bankruptcy filings).
6  III. Discussion
7        On a motion to dismiss, the court must accept the
8  allegations in the complaint as true and draw all reasonable
9  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416
10 U.S. 232, 236 (1974), overruled on other grounds by Davis v.
11 Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
12 (1972).  To survive a motion to dismiss, a plaintiff needs to
13 plead "only enough facts to state a claim to relief that is
14 plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.
15 544, 570 (2007).  This "plausibility standard," however, "asks
16 for more than a sheer possibility that a defendant has acted
17 unlawfully," and where a complaint pleads facts that are "merely
18 consistent with" a defendant's liability, it "stops short of the
19 line between possibility and plausibility."  Ashcroft v. Iqbal,
20 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).
21     A.   Negligent & Intentional Misrepresentation
22        To state a claim for intentional misrepresentation, a
23 plaintiff must allege: (1) a misrepresentation; (2) knowledge of
24 falsity; (3) intent to defraud; (4) justifiable reliance on the
25 misrepresentation; and (5) resulting damage.  Engalia v.
26 Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997); Kearns
27 v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  To state
28 a claim for negligent misrepresentation, a plaintiff must allege:

6

1   (1) a misrepresentation of a past or existing material fact; (2)

2   without reasonable ground for believing it to be true; (3) intent

3   to induce reliance; (4) justifiable reliance; and (5) resulting

4   damage.  Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,

5   158 Cal. App. 4th 226, 243 (2d Dist. 2007); Glenn K. Jackson,

6   Inc. v. Roe, 273 F.3d 1192, 1200 (9th Cir. 2000).

7          Plaintiff alleges, as he did in the First Amended

8   Complaint, that IndyMac falsely represented that plaintiff's

9   application for a loan modification was incomplete, (SAC ¶ 71),

10  that plaintiff was ineligible for a successive HAMP modification,

11  (id. ¶ 78), and that there was no foreclosure sale scheduled,

12  (id. ¶ 85).  Plaintiff alleges that, as a result of these

13  misrepresentations, he "continued [his] attempts to obtain a loan

14  modification" from IndyMac in lieu of pursuing other options to

15  avert foreclosure.  (Id. ¶¶ 76, 83, 90.)

16         Even if plaintiff could satisfy the first three

17  elements of each claim, he has not sufficiently alleged that he

18  acted in reliance on IndyMac's alleged misrepresentation.

19  Plaintiff has alleged no facts demonstrating that he changed his

20  position in reliance on IndyMac's alleged misrepresentations; on

21  the contrary, plaintiff repeatedly alleges that he "continued

22  [his] attempts to obtain a loan modification," which he had

23  initiated prior to any alleged misrepresentations.  (SAC ¶¶ 76,

24  83, 90 (emphasis added).)  Because the alleged misrepresentations

25  took place during the course of ongoing efforts to obtain a loan

26  modification, and because plaintiff's allegations indicate that

27  he continued to seek a modification both before and after IndyMac

28  made these alleged misrepresentations, plaintiff's allegations do

1  not show that he changed his position in reliance on these

2  misrepresentations.  See, e.g., Rossberg v. Bank of Am., N.A.,

3  219 Cal. App. 4th 1481, 1500 (4th Dist. 2013) (holding that

4  plaintiff's continued efforts to seek a loan modification from

5  Bank of America in lieu of obtaining alternative financing based

6  on alleged representations that plaintiff would receive a

7  modification did not constitute reliance).

8       Plaintiff alleges that had IndyMac had not made these

9  misrepresentations, he would have "explore[d] other options"

10  to postpone the foreclosure sale, including a short sale of the

11  property, filing for bankruptcy, and borrowing money to cure the

12  default.  (SAC ¶¶ 76, 83, 90.)  Although these allegations are

13  more specific than those in the First Amended Complaint, they are

14  nonetheless insufficient to survive dismissal because plaintiff

15  has not "allege[d] any facts suggesting how pursuing these

16  hypothetical avenues would have prevented the foreclosure of

17  [his] home."  Dick v. Am. Home. Mortg. Serv. Co., Civ. No. 2:13-

18  201 WBS CKD, 2014 WL 172537, at *4 (E.D. Cal. Jan. 15, 2014); see

19  also, e.g., Newgent v. Wells Fargo Bank, N.A., Civ. No. 9-1525

20  WQH, 2010 WL 761236, at *5 (S.D. Cal. Mar. 2, 2010) (dismissing

21  fraud claim because plaintiff did "not allege facts that support

22  a cognizable theory upon which she could have prevented the

23  trustee's sale").

24       For instance, in Sholiay v. Federal National Mortgage

25  Association, the plaintiff claimed that, but for defendant's

26  representation that he would receive a loan modification, he

27  would have retained an attorney to prevent the foreclosure of his

28  home.  Civ. No. 2:13-958 WBS, 2013 WL 3773896, at *6 (E.D. Cal.

1   July 17, 2013).  This court nonetheless dismissed the claim

2   because the plaintiff "fail[ed] to allege facts suggesting how

3   hiring a lawyer could have prevented the sale."  Id.

4          Like the plaintiff in Sholiay, plaintiff has failed to

5   allege any facts demonstrating that he would have been able to

6   avert the sale of his home through a short sale, a loan,

7   bankruptcy, or any other method.  Plaintiff's allegation that

8   IndyMac's promise of a loan modification deterred him from

9   declaring bankruptcy is particularly implausible, as plaintiff

10  allegedly continued to seek a loan modification even after he

11  filed his bankruptcy petition.  (See SAC ¶¶ 31-35.)  Plaintiff

12  has therefore not alleged sufficient facts to show that he relied

13  on IndyMac's alleged representations about his application for a

14  loan modification.

15         "Even assuming justifiable reliance . . . no liability

16  attaches if the damages sustained were otherwise inevitable or

17  due to unrelated causes."  Gardner v. RSM & A Foreclosure Servs.,

18  LLC, Civ. No. 2:12-2666 JAM AC, 2013 WL 3242211, at *4 (E.D. Cal.

19  June 25, 2013) (quoting Kruse v. Bank of Am., 202 Cal. App. 3d

20  38, 60-61 (1st Dist. 1988) (internal quotation marks omitted)).

21  Like his allegations in the First Amended Complaint, plaintiff's

22  allegations here do not show that any damages he suffered were a

23  result of IndyMac's conduct, rather than his own failure to make

24  his mortgage payments.  Trustee Corps recorded multiple notices

25  of default against plaintiff's home prior to any alleged

26  misrepresentations, and each of these notices states an arrearage

27  of over $10,000.  (See RJN Exs. B-D.)  Because plaintiff

28  repeatedly defaulted prior to any alleged misrepresentations, his

9

1   allegation that those misrepresentations resulted in the

2   foreclosure of his home is implausible.  See Manzano v. Metlife

3   Bank, N.A., Civ. No. 2:11-651 WBS DAD, 2011 WL 2080249, at *5

4   (E.D. Cal. May 25, 2011) (dismissing fraud and negligent

5   misrepresentation claims when "plaintiff stopped making payments

6   under the loan before these alleged misrepresentations were

7   made").

8        While plaintiff has amended his complaint to allege

9   that "[t]he above damages were not inevitable" and that his home

10  would not have been foreclosed upon "had the representations not

11  been false," (SAC ¶¶ 77, 84, 91), this allegation is also

12  implausible because plaintiff has not alleged any facts to

13  suggest that he could have avoided default.  "Without some

14  factual basis suggesting that [plaintiff] could have cured the

15  default . . . the [c]ourt cannot reasonably infer that

16  [IndyMac's] alleged misrepresentations resulted in the loss of

17  [plaintiff's] home.  Rather, the facts alleged suggest that

18  [plaintiff] lost [his] home because [he] became unable to keep up

19  with monthly payments and lacked the financial resources to cure

20  the default." DeLeon v. Wells Fargo Bank, N.A., Civ. No. 10-

21  10390 LHK, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011).

22  Accordingly, because plaintiff has not alleged sufficient facts

23  to demonstrate reliance or resulting damage, the court must grant

24  defendants' motion to dismiss his intentional and negligent

25  misrepresentation claims.

26       B.   Promissory Estoppel

27       "The elements of a promissory estoppel claim are: (1) a

28  promise that is clear and unambiguous in its terms; (2) reliance

1   on the promise by the party to whom the promise is made; (3) that

2   is reasonable and foreseeable; and (4) injury to the party

3   asserting estoppel due to his or her reliance." Alimena v.

4   Vericrest Fin., Inc., --- F. Supp. 2d ----, Civ. No. 2:12-901 LKK

5   JFM, 2013 WL 4049663, at *12 (E.D. Cal. Aug. 29, 2013) (citing

6   Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890-91

7   (2d Dist. 1976)).

8           Plaintiff again alleges that IndyMac "promised

9   [p]laintiff a HAMP loan modification in or about 2010 and further

10  promised not to foreclose on [p]laintiff while he was being

11  reviewed for a loan modification." (SAC ¶ 106.)  As explained

12  above, even if IndyMac had made these promises, plaintiff has not

13  sufficiently alleged that he suffered any injury in reliance on

14  those promises.  Accordingly, the court must grant defendants'

15  motion to dismiss plaintiff's promissory estoppel claim.

16          C.   Breach of Contract

17          "[T]he elements of a cause of action for breach of

18  contract are (1) the existence of the contract, (2) plaintiff's

19  performance or excuse for nonperformance, (3) defendant's breach,

20  and (4) the resulting damages to the plaintiff." Oasis W.

21  Realty, Inc. v. Goldman, 51 Cal. 4th 811, 821 (2011).

22          Plaintiff alleges that IndyMac promised to extend him a

23  permanent loan modification and that it breached this promise by

24  providing him with a "backup modification" with terms that were

25  inconsistent with HAMP guidelines. (SAC ¶ 101).  Plaintiff

26  concedes, as he did in the First Amended Complaint, that he did

27  not make all the payments that were required under the loan

28  modification agreement. (Id. ¶ 102.)  Because plaintiff has not

                                11

1   performed his obligation under any alleged contract, he cannot

2   bring a breach of contract claim unless his failure to perform is

3   excused.  See Goldman, 51 Cal. 4th at 821.

4           Plaintiff re-asserts that his failure to make payments

5   was excused because he could no longer afford to make the

6   payments, which were "based on inaccurate income and outside of

7   HAMP guidelines."  (Id.)  As the court emphasized in its previous

8   Order, this allegation is insufficient because "mere unforeseen

9   difficulty or performance . . . ordinarily will not excuse

10  performance."  1 Witkin, Summary of California Law (Contracts) §

11  830 (10th ed. 2005); accord Metzler v. Thye, 163 Cal. 95, 98

12  (1912).  Rather, plaintiff must allege that performance under the

13  terms of the Backup Modification was "objectively impossible" for

14  any person.  Rosales v. Downey Sav. & Loan Ass'n, Civ. No. 9-39

15  WQH AJB, 2009 WL 514229, at *8 (S.D. Cal. Mar. 2, 2009) (citation

16  omitted).  Because plaintiff has not done so, he cannot allege

17  that his performance was excused.  See, e.g., id.; Archiunda v.

18  Chase Home Fin. LLC, Civ. No. 9-960 H AJB, 2009 WL 1796295, at *5

19  (S.D. Cal. June 23, 2009) (holding that the plaintiff's

20  performance was not excused even though he alleged that "based

21  upon the actual income information provided . . . Plaintiff could

22  never perform according to the terms of the loan").

23          Insofar as it is not "impossible for anyone to perform"

24  under the terms of the Backup Modification, id., plaintiff's

25  alleged inability to make payments does not excuse his

26  performance.  Accordingly, the court must grant defendants'

27  motion to dismiss plaintiff's breach of contract claim.

28

1          D.    Negligence

2               "To prove a cause of action for negligence, plaintiff

3     must show (1) a legal duty to use reasonable care, (2) breach of

4     that duty, (3) proximate [or legal] cause between the breach and

5     (4) the [plaintiff's] injury." Castaneda, 687 F. Supp. 2d at

6     1197 (citing Mendoza v. City of Los Angeles, 66 Cal. App. 4th

7     1333, 1339 (2d Dist. 1998)) (internal quotation marks omitted).

8     "The existence of a legal duty to use reasonable care in a

9     particular factual situation is a question of law for the court

10    to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App.

11    4th 269, 278 (4th Dist. 2004).

12              As the court noted in its previous Order, the majority

13    of California courts hold that a loan servicer who offers to

14    modify a borrower's loan does not owe that borrower a duty of

15    care because "its involvement in the loan transaction does not

16    exceed the scope of its conventional role as a lender of money."

17    Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089,

18    1096 (3d Dist. 1991); see also Settle v. World Sav. Bank.,

19    F.S.B., Civ. No. 11-800 MMM (DTBx), 2012 WL 1026103, at *8 (C.D.

20    Cal. Jan. 11, 2012) (noting that "numerous cases have

21    characterized a loan modification as a traditional money lending

22    activity" and listing cases).  Indeed, plaintiff now concedes

23    that there is "[g]enerally . . . no duty" to grant a loan

24    modification.  (SAC ¶ 133.)  To the extent that plaintiff's

25    negligence claim is premised on the allegation that IndyMac

26    failed to modify his mortgage loan, plaintiff therefore cannot

27    state a claim for negligence.

28              Relying on Lueras v. BAC Home Loans Servicing, 221 Cal.

13

App. 4th 49 (4th Dist. 2013), plaintiff contends that IndyMac nonetheless had a duty "not to make a misrepresentation . . . regarding the status of the application or the time [] and status of the foreclosure sale." (SAC ¶ 113.)  In Lueras, the plaintiff brought a negligence claim arising out of the defendant's handling of his application for a loan modification.  221 Cal. App. 4th at 63.  Although the court held that plaintiff could not state a negligence claim because the defendant had no "common law duty to offer or approve a loan modification," it nonetheless concluded that "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale."  Id. at 67-68.  As a result, the court granted plaintiff leave to amend "to plead a cause of action for negligent misrepresentation."  Id. at 69 (emphasis added).

     As in Lueras, plaintiff has not alleged the existence of a duty of care that could support a negligence claim.  To the extent that plaintiff has alleged that IndyMac violated a duty not to misrepresent facts about the modification and foreclosure process, those allegations sound in negligent misrepresentation, rather than negligence.[4]  See 5 Witkin, Summary of Cal. Law

_____

     [4]   Unlike the plaintiff in Lueras, plaintiff has already alleged a negligent misrepresentation claim.  In fact, plaintiff's allegation that IndyMac was negligent because it "misrepresented the sale date," (SAC ¶ 115), closely parallels his allegation that IndyMac committed a "[m]isrepresentation" by "stat[ing] that there was no foreclosure sale date" (id. ¶ 85).  As explained above, these allegations are insufficient to state a negligent misrepresentation claim because plaintiff has not sufficiently alleged that he relied on these representations or

14

1   (Torts) § 819 (10th Ed. 2005) (noting that California law treats

2   negligent misrepresentation as a form of deceit, rather than as a

3   form of negligence); Bily v. Arthur Young & Co., 3 Cal. 4th 370,

4   413 (1992) (holding that plaintiffs can recover for negligent

5   misrepresentation, but not negligence, when they are able to

6   allege reliance on a defendant's misrepresentation but cannot

7   allege the existence of a duty of care).  Accordingly, because

8   plaintiff has not sufficiently alleged that IndyMac owed him a

9   duty of care, the court must grant defendants' motion to dismiss

10  plaintiff's negligence claim.

11      E.   HOLA Preemption[5]

12          Prior to the enactment of the Dodd-Frank Wall Street

13  Reform Act and Consumer Protection Act of 2010 ("Dodd-Frank

14  Act"), 12 U.S.C. § 5301 et seq., the Home Owners Loan Act of 1933

15  ("HOLA") authorized the Office of Thrift Supervision ("OTS") to

16  promulgate regulations governing federal savings associations.

17  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir.

18  2008) (citing then-current version of 12 U.S.C. § 1464).

19  Pursuant to that authority, OTS issued a regulation that

20  authorized federal savings associations to "extend credit as

21  authorized under federal law . . . without regard to state laws

22  purporting to regulate or otherwise affect their credit

23

24  suffered harm as a result of that reliance.

25          [5]   Defendants move to dismiss a total of five claims
    brought pursuant to California Business & Professions Code

26  section 17200 and California Civil Code sections 2923 and 2924 on
    the basis that these claims are preempted by HOLA.  Because the

27  court dismisses plaintiff's other claims on alternate grounds, it
    need not reach the issue of whether any of those claims are also

28  preempted by HOLA.

1  activities."  12 C.F.R. § 560.2(a).  By its own terms, that

2  regulation "occupie[d] the entire field of lending regulation for

3  federal savings associations," id., and therefore "left no room

4  for the States to supplement it."  Rice v. Santa Fe Elevator

5  Corp., 331 U.S. 218, 230 (1947).

6          Although the Dodd-Frank Act has since transferred that

7  authority to the Office of the Comptroller of the Currency, see

8  12 U.S.C. § 1464, and now provides that HOLA's implementing

9  regulations no longer occupy the field of lending regulation, see

10 12 U.S.C. § 1465, it explicitly provided that those amendments

11 "shall not be construed to alter or affect the applicability of

12 any regulation, order, guidance, or interpretation prescribed,

13 issued, and established by . . . . the Office of Thrift

14 Supervision regarding the applicability of State law under

15 Federal banking law to any contract entered into on or before the

16 date of enactment of this Act . . . ."  12 U.S.C. § 5553.  As a

17 result, "claims involving contracts formed before July 21, 2010

18 are subject to the preemption regime in place before Dodd-Frank,"

19 rather than the more lenient conflict preemption standard

20 established by the Dodd-Frank Act.  Settle, 2012 WL 1026103, at

21 *14; accord Henning v. Wachovia Mortg., FSB, --- F. Supp. 2d ----

22 , Civ. No. 11-11428 WGY, 2013 WL 5229837, at *5 (D. Mass. Sep.

23 17, 2013) ("Courts have uniformly held, however, that the

24 provisions of Dodd-Frank are not retroactive, and that HOLA

25 preemption applies to mortgages originated before either July 21,

26 2010 or July 21, 2011 . . . Because the loans at issue originated

27 before either date, the appropriate preemption standard to apply

28 . . . is that extant prior to the effective date of Dodd-Frank."

16

1    (citations omitted)).

2        At the time plaintiff entered into his mortgage loan,

3 OTS's implementing regulations explicitly stated that HOLA

4 preempted several enumerated types of state law, including any

5 state law that purports to regulate the "processing, origination,

6 servicing, sale, or purchase of, or investment or participation

7 in, mortgages."  12 C.F.R. § 560.2(b)(10).  That list encompasses

8 not only statutes that specifically regulate lending activities,

9 but also statutes of general applicability, such as the UCL.

10 See, e.g., Munoz v. Fin. Freedom Senior Funding Corp., 567 F.

11 Supp. 2d 1156, 1163 (C.D. Cal. 2008) (holding that UCL claims

12 were preempted by HOLA).  The regulation also includes a savings

13 clause stating that several types of state law, including

14 contract and commercial law, real property law, and tort law "are

15 not preempted to the extent that they only affect the lending

16 operations of Federal savings associations or are otherwise

17 consistent with the purposes of paragraph (a) of this section."

18 12 C.F.R. § 560.2(c).

19        OTS also promulgated a framework for courts to

20 determine "the status of state laws under § 560.2":

21      [T]he first step will be to determine whether the type
       of law in question is listed in paragraph (b).  If so,
22      the analysis will end there; the law is preempted.  If
       the law is not covered by paragraph (b), the next
23      question is whether the law affects lending.  If it
       does, then, in accordance with paragraph (a), the
24      presumption arises that the law is preempted.  This
       presumption can be reversed only if the law can be
25      shown to fit within the confines of paragraph (c).

26 OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).[6]

27 _____

28       [6]  Insofar as the Final Rule evinces OTS's interpretation
of the preemptive scope of § 560.2, it "must be given controlling

1     The Final Rule emphasized that "paragraph (c)," the

2  savings clause in the regulation, "is intended to be interpreted

3  narrowly" and that "[a]ny doubt should be resolved in favor of

4  preemption." Id.[7] In applying this framework, the relevant

5  issue is whether the state law, "as applied, is a type of law

6  contemplated in the list under paragraph (b)." Silvas, 514 F.3d

7  at 1006 (emphasis added).

8     IndyMac is a division of OneWest Bank, FSB, which is a

9  federally chartered savings bank.  The Deed of Trust noted that

10  the "Lender" was "IndyMac Bank, F.S.B., a federally chartered

11  savings bank."  (RJN Ex. A.)  Plaintiff initially entered into a

12  mortgage loan with IndyMac on December 7, 2005, (see id.), and

13  subsequently modified that loan on February 1, 2010 and July 14,

14  2010 (see SAC ¶¶ 18, 20).  Plaintiff's claims relating to his

15  mortgage loan are therefore subject to the preemption standard

16  set forth by 12 C.F.R. § 560.2, and the court must determine

17  whether plaintiff's five statutory claims are preempted.

18

19  weight." Silvas, 514 F.3d at 1005 n.5 (citing Auer v. Robbins,
    519 U.S. 452 (1997)); see also Basiri v. Xerox Corp., 463 F.3d
20  927, 930 (9th Cir. 2006) (explaining that an agency's
    interpretation of its own regulation is "controlling" under
21  Auer.)
           [7] While plaintiff invokes the "strong presumption"
22  against federal preemption, (Pl.'s Opp'n at 16:20-21 (Docket No.
23  48)), the Ninth Circuit has repeatedly held that this presumption
    does not apply to HOLA or its implementing regulations.  See Bank
24  of Am. v. City & County of San Francisco, 309 F.3d 551, 559 (9th
    Cir. 2002) ("[B]ecause there has been a history of significant
25  federal presence in national banking, the presumption against
    preemption of state law is inapplicable." (internal quotation
26  marks and citations omitted)); Silvas, 514 F.3d at 1004
27  (asserting that "HOLA and its following agency regulations [are]
    so pervasive as to leave no room for state regulatory control")
28  (citations and internal quotation marks omitted).

1          1.   California Civil Code Section 2923

2          Like plaintiff's first amended complaint, the SAC

3   brings claims under sections 2923.6(c), 2923.6(d), and 2923.7 of

4   the California Civil Code, which regulate loan modification

5   activities.  Plaintiff alleges that IndyMac violated these

6   provisions because it "dual-tracked" his application, (SAC ¶

7   126), did not permit him to appeal the denial of his application,

8   (id. ¶ 132), and failed to assign him a single point of contact

9   with regard to his application (id. ¶ 136).  Plaintiff alleges

10  that these violations resulted in the unlawful sale of his home

11  at a foreclosure sale.  (Id. ¶¶ 127, 133, 137.)

12         As the court held in its earlier Order, plaintiff's

13  section 2923 claims are preempted because they impose

14  requirements on the "processing, origination, [and] servicing" of

15  plaintiff's mortgage loan and application for a loan modification

16  in addition to those imposed by federal law.  12 C.F.R. §

17  560.2(b)(10); see, e.g., Biggins v. Wells Fargo & Co., 266 F.R.D.

18  399, 417 (N.D. Cal. 2009) (holding that a section 2923.6 claim

19  premised on failure to extend a loan modification was preempted

20  by HOLA); Marquez v. Wells Fargo Bank, N.A., Civ. No. 13-2819

21  PJH, 2013 WL 5141689, at *5 (N.D. Cal. Sept. 13, 2013) (holding

22  that a section 2923.7 claim based on allegations that the

23  plaintiffs were denied a single point of contact and were never

24  "given a meaningful opportunity to apply for, and receive, a loan

25  modification is preempted by HOLA").

26         Even if plaintiff were correct that section 2923 does

27  not fall into the enumerated categories of state law preempted by

28  section 560.2(b), plaintiff's section 2923 claim would

19

1  nonetheless be preempted because it would impose liability on

2  IndyMac for its conduct in the loan modification process and

3  thereby "affect[] lending."  Final Rule, 61 Fed. Reg. at 50966-

4  67; see, e.g., Parcray v. Shea Mortg., Inc., Civ. No. 2:09-1942

5  OWW GSA, 2010 WL 1659369, at *8 (E.D. Cal. Apr. 23, 2010)

6  (holding that claims alleging that a lender "failed to

7  communicate" with a borrower during the loan modification process

8  are preempted insofar as they impose duties on lenders that they

9  "would not be subject to . . . in other states") (citation and

10 internal quotation marks omitted).[8]  Accordingly, the court must

11 grant defendants' motion to dismiss plaintiff's section 2923

12 claims.

13            2.   California Civil Code Section 2924

14       Plaintiff also alleges, as he did in the First Amended

15 Complaint, that IndyMac assigned his mortgage loan to a

16 securitized trust.  As a result, plaintiff alleges, the Notice of

17 Default was void and the foreclosure sale violated section 2924

18 of the California Civil Code.

19       Section 2924 claims "based on misconduct related to the

20 foreclosure proceedings" are preempted by HOLA.  Ismail v. Wells

21       _____

         [8]     While plaintiff relies on Mabry v. Superior Court, 185
22 Cal. App. 4th 208 (4th Dist. 2010), in support of the proposition
   that section 2923 or other statutes governing the foreclosure
23 process are not preempted, that case represents a minority
   position.  See, e.g., Taguinod v. World Sav. Bank, 755 F. Supp.
24 2d 1064, 1074 (C.D. Cal. 2010) (characterizing Mabry as
   inconsistent with "the overwhelming weight of authority").
25 Plaintiff's reliance on Mabry and other decisions from the
   California Courts of Appeal is also misplaced because federal
26 courts, including this court, "are not bound by state court
   decisions on the preemptive effect of federal law."  In re
27 Holiday Airlines Corp., 647 F.2d 977, 980 (9th Cir. 1981)
28 (citations omitted).

Fargo Bank, N.A., Civ. No. 2:12-1653 MCE CKD, 2013 WL 930611, at *9 (E.D. Cal. Mar. 8, 2013) (citations omitted); see also, e.g., DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010) (holding that claims under sections 2923.5 and 2924 are preempted by HOLA).  Because plaintiff's section 2924 claim alleges that the assignment of his loan to a securitized trust was invalid, it is preempted because it would effectively regulate IndyMac's "sale or purchase" of mortgages.  12 C.F.R. § 560.2(b)(1)); Sami v. Wells Fargo Bank, Civ. No. 12-108 DMR, 2012 WL 967051, at *6-7 (N.D. Cal. Mar. 21, 2012) (holding that a section 2924 claim premised on allegations of an unlawful pooling and servicing agreement was preempted by HOLA).  Further, plaintiff's section 2924 claim is preempted by HOLA because it alleges that IndyMac lacked authority to initiate the foreclosure process.  Id. at *8; Kenery v. Wells Fargo, N.A., Civ. No. 5:13-2411 EJD, 2014 WL 129262, at *4 (N.D. Cal. Jan. 14, 2014) ("Plaintiff's claim is preempted by HOLA because it seeks to apply [section 2924] to impose requirements on the initiation of the foreclosure process." (citations omitted)).  Accordingly, the court must grant defendants' motion to dismiss plaintiff's section 2924 claim.

        3.   The UCL

        California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice . . . ."  Cal. Bus. & Profs. Code § 17200.  The UCL "establishes three varieties of unfair competition . . . In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa."  Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163,

180 (1999) (internal quotation marks and citations omitted).

Plaintiff brings a claim under the UCL for "unlawful business practices"[9] in which he alleges that defendants "violated Cal. Civ. Code §§ 2923.6, 2923.7, and 2924."[10]   (SAC ¶ 119.)  Because "those statutes would impose additional requirements on [IndyMac] in the mortgage process, the UCL claim is . . . preempted to the extent that it depends on those statutes."  Plastino v. Wells Fargo Bank, 873 F. Supp. 2d 1179, 1186 n.4 (N.D. Cal. 2012); see also Vega, 654 F. Supp. 2d at 1118 (holding that plaintiffs in a foreclosure-related action were "unable to avoid [HOLA] preemption in the guise of a UCL claim").  Accordingly, the court must grant defendants' motion to dismiss plaintiff's UCL claim.

---

[9]   Although plaintiff labels his UCL claim "unlawful business practices," some allegations suggest that he also seeks to assert a claim under the UCL's "unfair" prong.  (See, e.g., SAC ¶ 118 ("[T]he unlawful acts and practices of Defendants alleged herein constitute unlawful or unfair business practices . . . .").)  The court need not determine whether plaintiff has stated a claim under the UCL's "unfair" prong because any such claim would also be preempted.  See, e.g., Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1118 (E.D. Cal. 2009) (O'Neill, J.) (noting that a UCL claim brought under the "unfair" prong was preempted by HOLA to the extent that it relied on allegations of inadequate loan disclosures).

[10]   Plaintiff's UCL claim also reiterates his allegations that IndyMac committed "material misrepresentations affecting plaintiff's interest in [his home] and committed numerous acts of negligence in the handling of and processing of [p]laintiff's loan modification applications."  (SAC ¶ 119.)  These allegations cannot give rise to an "unlawful business practices" claim, which must be premised on the violation of a statute or constitutional provision.  Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1168 (9th Cir. 2012) (citing People ex rel. Lockyer v. Fremont Life Ins. Co., 104 Cal. App. 4th 508, 515 (2d Dist. 2002)).  Because plaintiff's section 2923 and 2924 claims are preempted by HOLA, plaintiff has no constitutional or statutory predicate for his UCL claim.  See id.

1       F.    <u>Wrongful Foreclosure</u>

2       "Wrongful foreclosure is an action in equity, where a

3 plaintiff seeks to set aside a foreclosure sale." <u>Castaneda</u>, 687

4 F. Supp. 2d at 1201. "A nonjudicial foreclosure sale is

5 accompanied by a presumption that it was conducted regularly and

6 fairly." <u>Melendrez v. D & I Inv., Inc.</u>, 127 Cal. App. 4th 1238,

7 1258 (6th Dist. 2005) (internal quotation marks omitted). "This

8 presumption may only be rebutted by substantial evidence of

9 prejudicial procedural irregularity." <u>Id.</u>; <u>see also</u> <u>Quinteros v.</u>

10 <u>Aurora Loan Servs.</u>, 740 F. Supp. 2d 1163, 1169 (E.D. Cal. 2010)

11 (Ishii, J.) ("[S]ome form of actual prejudice is necessary.").

12 On a motion to dismiss, therefore, a plaintiff must allege "facts

13 showing that [he was] prejudiced by the alleged procedural

14 defects." <u>Hadley v. BNC Mortg., Inc.</u>, 466 Fed. App'x 612, 613

15 (9th Cir. 2012) (citing <u>Arnolds Mgmt. Corp. v. Eischen</u>, 158 Cal.

16 App. 3d 575 (2d Dist. 1984)).

17       In order to demonstrate prejudice, plaintiff must show

18 not only that he lost his home in a foreclosure sale, but that

19 the alleged "violation of the statute[s] [themselves], and not

20 the foreclosure proceedings, caused [his] injury." <u>Aguiar v.</u>

21 <u>Wells Fargo Bank, N.A.</u>, Civ. No. 12-3653 YGR, 2012 WL 5915124, at

22 *5 (N.D. Cal. Nov. 26, 2012). Although plaintiff has amended

23 his complaint to allege that he would have qualified for a loan

24 modification and avoided foreclosure "[h]ad . . . [d]efendants

25 complied with the code," (SAC ¶ 147), this allegation suffers

26 from the same two defects as his earlier complaint.

27       First, because plaintiff's statutory claims cannot

28 withstand dismissal, plaintiff cannot bring a wrongful

1   foreclosure claim predicated on violations of those statutes.

2   See, e.g., Falcocchia v. Saxon Mortg., Inc., 709 F. Supp. 2d 873,

3   887 (E.D. Cal. 2010) (Karlton, J.) (holding that because

4   plaintiff's statutory claims under the Real Estate Settlement

5   Procedures Act (RESPA) failed, plaintiff could not bring a

6   wrongful foreclosure claim based on RESPA violations).  Nor can

7   plaintiff avoid pre-emption by re-characterizing his statutory

8   claims as a wrongful foreclosure claim.  See DeLeon, 729 F. Supp.

9   2d at 1126 (holding that plaintiff's wrongful foreclosure claim

10  was preempted because it relied upon violations of statutory

11  claims that were preempted).

12          Second, even if plaintiff could bring this wrongful

13  foreclosure claim, plaintiff has not alleged any facts suggesting

14  that he was prejudiced by any statutory violations.  Throughout

15  the SAC, plaintiff alleges that he was not assigned a single

16  point of contact about his loan modification application, (SAC ¶

17  136), was "dual-tracked," (id. ¶ 126), and was denied an

18  opportunity to appeal the denial of his application for a loan

19  modification (id. ¶132).  Plaintiff has not alleged any facts

20  showing that these alleged irregularities resulted in the denial

21  of his application for a loan modification or that he could have

22  successfully applied the denial of his application for a loan

23  modification.  Plaintiff has therefore not shown that these

24  alleged "violations of the statute[s] [themselves], and not the

25  foreclosure proceedings, caused [his] injury."  Aguiar, 2012 WL

26  5915124, at *5.  Accordingly, the court must grant defendants'

27  motion to dismiss this claim.

28

1    G.    Claims Against Freddie Mac

2         Plaintiff alleges that Freddie Mac is liable for

3    IndyMac's conduct because IndyMac acted as the agent of Freddie

4    Mac, the owner of plaintiff's loan.  (SAC ¶¶ 52-59.)  Because

5    plaintiff has not stated a claim for relief against IndyMac and

6    alleges no separate wrongdoing by Freddie Mac, the court need not

7    determine whether plaintiff has alleged sufficient "facts that

8    would create a plausible agency relationship" between IndyMac and

9    Freddie Mac.  Castaneda v. Saxon Mortg. Servs., Inc., Civ. No.

10   2:09-1124 WBS DAD, 2010 WL 726903, at *6 (E.D. Cal. Feb 26,

11   2010).  Accordingly, the court must grant defendants' motion to

12   dismiss all claims against Freddie Mac.

13   H.    Leave to Amend

14        Although leave to amend must be freely granted, the

15   court need not permit futile amendments.  See DeSoto v. Yellow

16   Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).  Because

17   the court has already permitted plaintiffs to amend their

18   pleadings and it appears that plaintiffs are unable to state a

19   viable claim against defendants, all claims will be dismissed

20   with prejudice and without leave to amend.

21        IT IS THEREFORE ORDERED that defendants' motion to

22   dismiss be, and the same hereby is, GRANTED.

23        The Clerk of the Court is directed to enter a judgment

24   of dismissal in accordance with this Order and close the file.

25   Dated:  January 22, 2014

26   _____
     WILLIAM B. SHUBB

27   UNITED STATES DISTRICT JUDGE

28
                             25